Filed 7/25/14  P. v. Rios CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>EDWARD CORCHADO RIOS, JR.,<br><br>　　Defendant and Appellant. | F067418<br><br>(Super. Ct. No. F13900796)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  W. Kent Hamlin, Judge.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Levy, Acting P.J., Poochigian, J. and Peña, J.

## INTRODUCTION

Following a jury trial, defendant Edward Corchado Rios, Jr., was convicted of the crimes of assault by means likely to produce great bodily injury, battery with serious bodily injury, and possession of a controlled substance. The jury also found true certain enhancements. Defendant was sentenced to nine years eight months in state prison. On appeal, defendant contends the trial court violated his due process rights by permitting the admission of two prior convictions related to domestic violence under Evidence Code sections 352 and 1109. We affirm, finding the trial court did not err in permitting the admission of defendant's prior conviction evidence.

## FACTUAL BACKGROUND

Ashley Vera and defendant had an off-and-on-again dating relationship. On January 19, 2013, defendant asked Vera for a ride to Fresno. She picked him up at his home about 8:00 p.m.

During the drive, defendant told Vera he wanted his house keys back. When she asked him why, defendant replied, "Bitch, give me my house keys." Because she was driving, and defendant's keys were on the same keyring as the car's ignition key, Vera indicated she would return the house keys when she stopped the car. Defendant then hit her in the head with a soda cup. She asked him what he was doing and defendant continued to hit her. Vera was not hurt by these blows. However, she turned the car around and took defendant home.

Once back at his residence, defendant grabbed Vera's keys. A struggle over the keys ensued, Vera believing defendant would not return her car keys. Defendant then bit her hand and she let go of the keys. Vera yelled at defendant, asking, "what are you doing? What's wrong with you?" In response, defendant hit her in the face with a closed fist. Blood was everywhere. When Vera said, "Oh my God, I think you just broke my tooth or something," defendant responded, "Bitch, you ain't got no teeth."

Vera left defendant's residence and went in search of her mother. Eventually finding her mother at her grandmother's house nearby, Vera was taken to the fire station.

There, Vera was treated by a firefighter; an ambulance and the police were called. Cal Fire Apparatus Engineer Ryan Wallace treated Vera. She complained of pain in her jaw and was holding her mouth area. Blood was present. Wallace could not discern whether Vera's jaw was broken, but he recommended she go to the hospital. Wallace asked Vera how the injury had occurred and she stated her boyfriend "Eddie" hit her.

Paramedic Jose Becerra responded to the fire station and also treated Vera that evening. She told him her boyfriend punched her twice with a closed fist. She was holding her jaw and complaining of pain. She reported a pain level of 8 on a scale of 1 to 10. After administering morphine for pain, Becerra and his partner transported Vera to a hospital for treatment.

Police officer Christopher Tsaris obtained a statement from Vera at the fire station. She was obviously in pain and had difficulty speaking. Thereafter, the officer sought out defendant. No one was present at defendant's home. The following day, Officer Tsaris returned to defendant's house hoping to speak with him. Defendant was not home, but the officer advised defendant's father he wished to speak with defendant and asked he make contact. Defendant did not initiate contact with Officer Tsaris however.

Officer Tsaris returned to defendant's home on January 25, and as he approached the house he could hear people talking and could see into the home through a window in the front door. Defendant was inside. He was subsequently arrested and transported to the police station. During the booking process, a small baggie containing an off-white crystal substance was found in defendant's left front pants pocket. The substance was later determined to be 0.2221 grams of methamphetamine.

After reading defendant his *Miranda* (*Miranda v. Arizona* (1966) 384 U.S. 436) warnings, Officer Tsaris took defendant's statement. A video recording of the interview was played for the jury. Defendant claimed Vera was at his home that evening uninvited. Further, defendant claimed he was angry with her because she had taken a stereo or radio out of a car parked at his home without his permission. Defendant indicated Vera was in possession of a set of keys to his home and he had not given her the keys. He grabbed

3.

Vera's keys and started to take his keys off her keyring. She then jumped on his back, yelling at him. Defendant "shrugged" Vera off his back, swinging his elbow backwards. Vera "jump[ed] back," falling over a speaker box. Defendant did not believe he broke Vera's jaw and indicated all the teeth on her lower jaw were removed as a result of poor hygiene. Defendant claimed Vera had been angry in part because he did not wish for their relationship to be exclusive.

Vera sustained a left subcondylar fracture as well as a right parasymphysis fracture of her jaw. Some of her teeth were displaced as a result. The amount of force required to cause this type of injury was likely to have occurred as the result of a direct intentional force, such as a strike with a closed fist at close range. An open reduction internal fixation of the right parasymphysis mandible and a closed reduction and maxillo mandibular fixation were performed. Titanium plates were used and Vera's jaw was wired shut.[1] She would have experienced postoperative surgical pain. Some patients with such an injury can experience chronic pain or tooth loss due to nerve damage. Vera testified she suffered swelling and pain and residual damaged to her teeth. She could not eat solid food following surgery and was required to "eat food through a straw." At the time of trial, she still could not bite into solid food.

## DISCUSSION

Defendant maintains the trial court violated his due process rights by permitting, under Evidence Code sections 352 and 1109, the admission of two prior convictions related to domestic violence. More particularly, he contends error was the result of the admission of a 2004 prior conviction for false imprisonment (Pen. Code, § 236) and a 2009 misdemeanor conviction for corporal punishment or injury of a child (former Pen. Code, § 273d, subd. (a)). Respondent asserts the trial court did not violate defendant's due process rights by admitting the evidence.

---

[1]Surgery was performed about two weeks after the date of the injury.

*The Relevant Authority*

Evidence Code section 1109 provides that a "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." Section 352 states a "court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"Domestic violence" is defined, for purposes of Evidence Code section 1109, as having

> "the meaning set forth in Section 13700 of the Penal Code. Subject to a hearing conducted pursuant to Section 352, which shall include consideration of any corroboration and remoteness in time, 'domestic violence' has the further meaning as set forth in Section 6211 of the Family Code, if the act occurred no more than five years before the charged offense." (*Id.*, at subd. (d)(3).)

"Character evidence, sometimes described as evidence of a propensity or disposition to engage in a type of conduct, is generally inadmissible to prove a person's conduct on a specified occasion. [Citations.]" (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1159; see Evid. Code, § 1101, subd. (a).) However, section 1109, which concerns domestic violence, is a specific exception to the general rule. (*People v. Villatoro*, *supra*, at p. 1159; see *People v. James* (2010) 191 Cal.App.4th 478, 482.)

The trial court's discretion to exclude the propensity evidence under Evidence Code section 352 saves section 1109 from a due process challenge. (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1233, fn. 14; *People v. Johnson* (2000) 77 Cal.App.4th 410, 418–420; cf. *People v. Falsetta* (1999) 21 Cal.4th 903, 917.)

"'When an objection to evidence is raised under Evidence Code section 352, the trial court is required to weigh the evidence's probative value against the dangers of prejudice, confusion, and undue time consumption. Unless these dangers "substantially

5.

outweigh" probative value, the objection must be overruled. [Citation.]'" (*People v. Hart* (1999) 20 Cal.4th 546, 606.) "The governing test … evaluates the risk of '*undue*' prejudice, that is, '"evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues,"' not the prejudice 'that naturally flows from relevant, highly probative evidence.' [Citations.]" (*People v. Padilla* (1995) 11 Cal.4th 891, 925, overruled on another ground in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) A trial court enjoys broad discretion in assessing probative value versus prejudicial effect, and its exercise of that discretion will not be disturbed on appeal except on a showing the court exceeded the bounds of reason, all of the circumstances being considered. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125*; People v. Giminez* (1975) 14 Cal.3d 68, 72.)

**The Proceedings Below**

The People sought to use four of defendant's prior convictions in accordance with Evidence Code section 1109: (1) a 2009 misdemeanor conviction (former Pen. Code, § 273d, subd. (a)); (2) a 2004 felony conviction (*id.*, § 236); (3) a 1999 misdemeanor conviction (*id.*, § 273.5, subd. (a)); and (4) a 1993 misdemeanor conviction (*id.*, § 273.5, subd. (a)).

During pretrial proceedings concerning the motions in limine filed by both parties, the court indicated, in relevant part, as follows:

> "Acts of basically a [Penal Code section] 236 against a spouse clearly would be an act of domestic violence. It would be appropriately considered by the jurors in evaluating the charges here, and it strikes me that the child abuse case would be as well. So my tentative with respect to those prior bad acts of the defendant … for purposes of [Evidence Code section] 1109 … is as follows: The tentative would be that the People could introduce evidence of the 200[9] conviction for a misdemeanor crime of child abuse, specifically infliction of traumatic injury on a child as a misdemeanor. They could introduce evidence of the 2004 conviction for false imprisonment and could produce live witness testimony to confirm that the complaining witness or victim in that case was, in fact, in a relationship, spousal or otherwise, with the defendant. And certainly the jurors would be told they could only consider those pursuant to [Evidence Code section] 1109, and they'd be free to consider or not consider those in evaluating

6.

whether the charged crimes here were committed.… The other crimes I think are sufficiently remote, and because of their nature, sufficiently prejudicial, that it would be appropriate to exclude them. So the tentative would be then to exclude the PC 69 from 2009, the PC [273.5] from '[99] and PC [273.5] from '93. Admittedly the 69 doesn't carry the same prejudicial effect as the 273.5s, but it is somewhat remote in time, and it is certainly a crime of violence which does carry with it some potential prejudice. I think balancing all of these prior bad acts and the probative value of them that's a fair compromise that allows the People to demonstrate some history of violence in a spousal setting and in a domestic setting without so—without piling on to the point where the jurors hear so much about prior incidents that they would be unable to fairly consider whether he committed the crimes charged here."

Defense counsel expressed his concern the testimony anticipated with regard to the false imprisonment conviction could involve "some explosive facts[;] … it's an alleged kidnap of the wife and kids, it was alleged attempted suicide, and alleged rape …." The court explained the People would be permitted to briefly call the witness to establish whether defendant was her husband in 2004, and whether she was the complaining witness in the case in which he was convicted of false imprisonment. Assuming she replied truthfully, the specific factual allegations regarding rape and kidnapping would not be addressed.

Next, defense counsel argued the "child abuse" conviction was substantially more prejudicial than probative, and thus it was likely his client would be convicted "off prior incidents alone" were the evidence to be admitted. A discussion ensued between the court and the People about how the evidence would come before the jury as the People did not intend to call the victim in that case. The trial court stated in pertinent part:

> "[I]f he abused his niece who lived in a home with him or was in a domestic setting with him, that would be an act of domestic violence that the jurors could appropriately consider. If he hit his niece in some other setting or struck some other child in some other setting, then it would be more prejudicial than probative. So I may have to—may have to back up on that … conviction."

And,

> "… I think that the probative value depends upon it being a domestic incident, so she would have to be, you know, a child that he babysat for, or a child who lived in his home for some period of time while his brother was unavailable or something. There would have to be something that connects

7.

it to the domestic quality of this case in order to make it sufficiently probative, I would think.  And again, I haven't read [the People's] case that provides they are cross admissible, but I'm sort of starting with the assumption that in that Dallas case, um, it was the child of his new girlfriend, and basically they allowed the domestic violence priors of his prior girlfriend to prove or as evidence of the current child abuse and—and there we've got a child in the residence with a spouse or girlfriend, and then we've got the prior incident with the girlfriend.  And so logically then that has a higher level of probative value than simply a conviction for abusing a child, so—so I guess, like I say, at this point I would reserve on that."

Shortly thereafter, the court commented specifically on defendant's prior conviction involving his niece: "I'll wait for a further offer of proof as to how it is that you would establish that this incident with the niece is sufficiently domestic in character to warrant its introduction here, because I do think that's an important element of its probative value that I think need to have readily established in order to find that its probative value is not substantially outweighed by its prejudicial effect."  Later, responding to an inquiry by the People, the trial court stated, "[T]he jurors have to know or at least understand that this incident occurred in a domestic setting, otherwise the probative value is insufficient …."  The court concluded by stating that when it was clear the proper foundation could be lain with regard to the domestic nature of the matter involving defendant's niece, "then I think we have sufficient probative value to warrant … admissibility."

During trial, and following the brief testimony of defendant's ex-wife, the following stipulations were read to the jury:[2]

"[PROSECUTOR]:  … The parties stipulate that the defendant … was previously convicted of a violation of Penal Code 236, false imprisonment by violence in Fresno Superior Court case number F04[904947-9] on October 28th, 2004.  The parties stipulate that the violation of Penal Code section 236 occurred on or about April 3rd, 2004. [¶] … [¶]

---

[2]For the purpose of proving a disposition to commit domestic violence or sexual offenses under Evidence Code sections 1108 and 1109, the record of a conviction is admissible to prove that defendant committed the prior offenses.  (Evid. Code, § 452.5, subd. (b); *People v. Wesson* (2006) 138 Cal.App.4th 959, 967–968; *People v. Duran* (2002) 97 Cal.App.4th 1448, 1461.)

"… And the second stipulation:  The parties stipulate that the defendant … previously was convicted of a [misdemeanor] violation of Penal Code [273d], infliction of a corporal injury to a child in Fresno Superior Court case number F09903293 on December 3rd, 2009.  The parties stipulate that the violation of Penal Code section [273d] occurred on or about November 2nd, 2008.  The parties further stipulate that the victim in F09903293, … was 11 at the time of the offense.  The parties also stipulate that [the victim] was the defendant's niece and that the defendant had care and supervision of [the victim] at the time of the offense."

After both sides had rested, the People addressed these prior convictions during closing argument:

"[PROSECUTOR:] What about the defendant's history?  Where does that fit in this case?  You heard about some convictions that were stipulated to.  And the instruction—it talks about proving beyond a reasonable doubt.  A stipulation means you must assume that those facts are true.  So it is truthfully proven to you the defendant has a conviction in 2004 for false imprisonment by violence on his ex-wife ….  It is also proven to you that he has a conviction in 2009 for inflicting corporal injury on a child, his 11-year-old niece.  Well, it means that whenever we listen to the defendant's story, we have to remember who this defendant is.  This is a defendant who has a propensity to commit domestic violence.  He hurts people that are close to him.  He—false imprisonment by violence means that just taking the—the general terms, his ex-wife wanted to leave a situation and he kept her against her will.  He took away her freedom.  And corporal injury to a child, infliction of injury to a child, means the defendant hit his 11-year-old niece and left an injury.  Means that in situations where he's in an argument or disagreement or discussion, what does he do?  He lashes out and he hurts people.  He hurts people that are closest to him.  So when we listen to him and he's talking about his defenses and talking about his—the reasonableness in his interview, we have to remember who he is."

In rebuttal, the People briefly mentioned the prior convictions:  "And when we look at his history, this is a man who does that to people that are close to him.  He did it to his ex-wife, he did it to his niece, and now he did it to Ashley Vera."

*Our Analysis*

**The Prior Domestic Violence Convictions**

Although the Supreme Court has not addressed the constitutionality of Evidence Code section 1109, the Courts of Appeal have uniformly held that, under the reasoning of

*People v. Falsetta*, *supra*, 21 Cal.4th 903,**3** it does not violate due process.  (See, e.g., *People v. Cabrera* (2007) 152 Cal.App.4th 695, 703–704; *People v. Rucker* (2005) 126 Cal.App.4th 1107, 1120; *People v. Price* (2004) 120 Cal.App.4th 224, 239–241; *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095–1096; *People v. James* (2000) 81 Cal.App.4th 1343, 1353; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1309–1313; *People v. Brown* (2000) 77 Cal.App.4th 1324, 1335; *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1027–1028; *People v. Johnson* (2000) 77 Cal.App.4th 410, 417–420.)

Further, defendant's constitutional challenge to Evidence Code section 1109 is based in part on *McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378.  As explained in *People v. Holford* (2012) 203 Cal.App.4th 155, however, defendant's reliance on *McKinney* is misplaced.  *McKinney* was decided "before enactment of the federal rules allowing evidence of uncharged sexual assaults and child molestation and the enactment of section 1108 …."  (*People v. Holford*, *supra*, at p. 183, fn. 19.)  "The application of *McKinney*'s holding in the context of section 1108 evidence has been repeatedly rejected.  [Citations.]  The Ninth Circuit and other federal courts have long since upheld the constitutionality of the federal rules allowing sexual misconduct evidence to establish propensity to commit such crimes.  [Citations.]"  (*Ibid.*)

The admission of prior act evidence pursuant to Evidence Code section 1109 did not violate defendant's constitutional rights to due process where the court also considered its exclusion pursuant to section 352.  We now turn to that determination.

---

**3**In that case, the California Supreme Court considered the constitutionality of Evidence Code section 1108 concerning prior sex crimes.  It rejected the argument that the Legislature may not constitutionally permit a jury to consider the defendant's propensity to commit a particular type of crime in deciding the defendant's guilt of a current offense of the same type of crime.  "The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair.  [Citations.]"  (*People v. Falsetta*, *supra*, 21 Cal.4th at p. 913.)

**Probative Value Versus Prejudice**

Defendant contends the admission of the prior acts evidence was more prejudicial than probative, and the trial court's evaluation was lacking.

On appeal, a reviewing court applies an abuse of discretion standard when evaluating whether a trial court erred in assessing whether the probative value of the questioned evidence was substantially outweighed by the probability of undue prejudice. Unless the trial court's determination was arbitrary, capricious, or patently absurd, its holding will be upheld. (*People v. Thomas* (2012) 53 Cal.4th 771, 806.)

"[A]s the Supreme Court has repeatedly and recently reaffirmed, 'when ruling on a[n] [Evidence Code] section 352 motion, a trial court need not expressly weigh prejudice against probative value, or even expressly state that it has done so. All that is required is that the record demonstrates the trial court understood and fulfilled its responsibilities under … section 352.'" (*People v. Jennings*, *supra*, 81 Cal.App.4th at p. 1315.)

Here, the record demonstrates, as outlined more fully above, that the trial court understood and properly discharged its responsibilities. The trial court advised the parties of its tentative ruling on the issue following consideration of the competing motions in limine, and it heard and considered the argument of counsel. It is clear the court was attuned to its responsibilities and engaged in its consideration of the probative value versus prejudicial effect of the prior act evidence. It did so carefully and thoughtfully. We cannot agree with defendant that the court abused its discretion.

The prior acts evidence was probative. The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense. (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531–532.) Similar acts of domestic violence are "uniquely probative" of guilt in a later accusation because domestic violence is "typically repetitive" in nature. (*Id.* at p. 532.) As the People argued below, defendant's reaction when angered by those with whom he enjoys a spousal/domestic or familial relationship is to hurt them. The false imprisonment of his ex-wife is similar to the assault and battery committed against Vera. In combination with the evidence of the charged offenses

11.

involving Vera, the prior acts evidence involving defendant's ex-wife and his niece tended to show he resorted to violence when angered by females in his life, demonstrating the repetitive nature of domestic violence.

In *People v. Dallas* (2008) 165 Cal.App.4th 940, the mother's live-in boyfriend perpetrated violence against her nine-month-old baby. The defendant had committed previous acts of domestic violence against a former girlfriend as well as previous acts of child abuse against the former girlfriend's child. That evidence was admitted at trial. (*People v. Dallas*, *supra*, at pp. 943-948.) On appeal, the defendant argued the offense concerning child abuse was dissimilar to domestic violence. (*Id* at pp. 949-951.) The appellate court held that a prosecution for child abuse pursuant to Penal Code section 273a, subdivision (a) constituted a "domestic violence" prosecution as the term is used in Evidence Code section 1109. (*People v. Dallas*, at pp. 951-956.) Therefore, the appellate court concluded the trial court did not err in admitting the evidence of prior acts of domestic violence. (*Id*. at p. 957.) Similar to the holding in *Dallas*, we hold here that the trial court did not err in admitting evidence of defendant's prior act of child abuse involving his 11-year-old niece while she was under his care and supervision. Defendant's 2009 conviction falls within the definition of Family Code section 6211, subdivision (f) because defendant's niece is a "person related by consanguinity or affinity within the second degree."

Defendant also contends that evidence of his prior conviction for corporal injury to a child is prejudicial because the offense was only a misdemeanor. However, Evidence Code section 1109 expressly permits the admission of "evidence of the defendant's commission of *other* domestic violence." (*Id.*, subd. (a)(1), italics added.) It encompasses both charged and uncharged acts of domestic violence. (See, e.g., *People v. Falsetta*, *supra*, 21 Cal.4th at pp. 917-918; *People v. Brown*, *supra*, 77 Cal.App.4th at pp. 1332-1334.) Moreover, evidence of a prior act of domestic violence may be introduced as propensity evidence even if the defendant was acquitted of criminal charges based upon that incident. (See, e.g., *People v. Mullens* (2004) 119 Cal.App.4th 648, 665–668

[prior sexual offenses admissible under § 1108 even though resulted in acquittal, but trial court erred in excluding evidence of acquittal itself].)  Thus, the mere fact defendant's 2009 prior conviction was a misdemeanor did not render it inadmissible under section 1109 or prejudicial under section 352.

Additionally, the prior acts evidence was not unduly prejudicial.  To be sure, the probative value of prior domestic violence evidence must be balanced against its inflammatory nature, if any, in determining its admissibility under Evidence Code section 352.  (*People v. Branch* (2001) 91 Cal.App.4th 274, 282.)  But here, the prior acts evidence was no more inflammatory, and arguably less so, than the charged offense evidence.  Defendant's ex-wife did no more than confirm she was in a relationship with him at the time of the incident resulting in a conviction for false imprisonment.  The particulars regarding the incident that led to the conviction were never before the jury.[4]  Similarly, the particulars of the incident involving defendant's 11-year-old niece leading to his conviction in 2009 were never presented to the jury.  By way of stipulation, the jury learned defendant was "convicted of a violation of Penal Code [273d], infliction of a corporal injury to a child …."  No reference whatsoever was made to the facts underlying the conviction.  (See, e.g., *People v. Jones* (2012) 54 Cal.4th 1, 50-51 [limited testimony no more prejudicial or inflammatory than the charged offenses].)

"'The stronger the evidence, the more it is "prejudicial."  The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.  In applying section 352, "prejudicial" is not synonymous with "damaging."'"  (*People v. Karis* (1988) 46 Cal.3d 612, 638.)  Here, as noted above, the evidence offered

---

[4]In the event defendant's ex-wife were to deny she was the victim in the incident giving rise to defendant's conviction in 2004, the People advised the court that potential impeachment could be had in the form of her preliminary hearing testimony in that case concerning kidnapping, rape, spousal abuse, and false imprisonment.  However, impeachment evidence was unnecessary.

in light of the prior bad acts was sanitized as to the particular facts involved and, thus, did not evoke the emotional bias defendant contends it did.

Moreover, there is no evidence the jury was confused. It was properly instructed (further discussion, *post*) regarding Evidence Code section 1109 evidence. The jury was properly instructed regarding the People's burden to prove the charges beyond a reasonable doubt. And defense counsel reminded the jurors of that burden during his closing argument. Specifically, the court advised the jury it could (but was not required to) conclude that evidence of the uncharged acts demonstrated in defendant a propensity toward domestic violence and that section 1109 evidence could not be used, by itself, to convict defendant. (E.g., *People v. Falsetta*, *supra*, 21 Cal.4th at p. 920 [cautionary instruction concerning admission of uncharged sex offense evidence under § 1108 "will help assure that the defendant will not be convicted of the charged offense merely because the evidence of his other offenses indicates he is a 'bad person' with a criminal disposition"].) We thus conclude that while there was the possibility of jury confusion created by admission of the section 1109 evidence, this possibility was minimal, and defendant cites to nothing in the record establishing this possibility was realized.

Assuming arguendo the prior acts evidence was more prejudicial than probative, any error in admitting the evidence would not rise to a due process violation. The Courts of Appeal have repeatedly held it is precisely the trial court's discretion to exclude evidence under Evidence Code section 352 that saves section 1109 from a due process challenge. (See, e.g., *People v. Brown*, *supra*, 77 Cal.App.4th at p. 1334.) An erroneous exercise of discretion under section 352 generally does not rise to a problem of constitutional magnitude. The "routine application of state evidentiary law does not implicate [a] defendant's constitutional rights." (*People v. Brown* (2003) 31 Cal.4th 518, 545.)

In this case, the trial court acted well within its discretion in admitting the challenged evidence. Its determination was neither arbitrary, capricious, nor patently absurd. Its determination did not exceed the bounds of reason. Since the evidence was

admitted for a permissible purpose and its exclusion was not compelled by Evidence Code section 352, defendant's due process rights were not violated. (See, e.g., *Estelle v. McGuire* (1991) 502 U.S. 62, 70; *People v. Falsetta*, *supra*, 21 Cal.4th at pp. 912–913; *People v. Escobar*, *supra*, 82 Cal.App.4th at pp. 1095–1096.)

**CALCRIM No. 852 & Closing Arguments**

At the People's request, the jury was instructed as follows:

"[THE COURT]: The People presented evidence that the defendant committed domestic violence that was not charged in this case.

"Domestic violence includes abuse committed against a spouse, former spouse, niece or nephew. Abuse means intentionally or recklessly causing or attempting to cause bodily injury or placing another person in reasonable fear of imminent serious bodily injury to herself or to someone else.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged domestic violence. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to conclude from that evidence that the defendant was disposed or inclined to commit domestic violence, and based on that decision also conclude that the defendant was likely to commit and did commit the crimes charged here. If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crimes charged or the lesser offenses to those crimes. The People must still prove each charge beyond a reasonable doubt.

"Do not consider this evidence for any other purpose."

Challenges to the constitutionality of CALCRIM No. 852 and its predecessor have been rejected. (*People v. Johnson* (2008) 164 Cal.App.4th 731, 738-740 [CALCRIM No. 852 constitutional]; see *People v. Reyes* (2008) 160 Cal.App.4th 246, 251 [CALJIC

No. 2.50.02 constitutional].)  Despite defendant's assertion, we conclude CALCRIM No. 852 did not encourage the jury to use the prior crimes evidence to convict defendant of the charged crimes.  The record simply does not support this assertion.

Defendant also complains the prosecutor's comments during closing argument "encouraged the jury to use the prior crimes evidence to show [defendant]'s propensity to commit the charged crimes."

The prosecutor's comments, excerpted in their entirety above, were brief.  Other than stating the fact of the prior convictions, the prosecutor simply argued that when defendant was faced with a situation wherein he was angry with an individual close to him, defendant's response was to "lash[] out" and hurt those people.  Like defendant's assertion that CALCRIM No. 852 encouraged the jury to convict him of the charged offenses based upon the prior acts, the record does not support this contention.  Rather, the prosecutor's comments were a fair comment upon the evidence and nothing more. (See, e.g., *People v. Dykes* (2009) 46 Cal.4th 731, 768.)

In sum, the prior act evidence, either cumulatively or in isolation, was not prejudicial.  The trial court was well within the bounds of its discretion in concluding the evidence's probative value was not "substantially outweighed by the probability that its admission [would have] (a) necessitate[d] undue consumption of time or (b) create[d] substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

Finally, even were we to assume evidentiary error, whether assessed under the federal[5] or state[6] constitutional standard of review, any error was harmless.[7]  This was

---

[5]*Chapman v. California* (1967) 386 U.S. 18, 24.

[6]*People v. Watson* (1956) 46 Cal.2d 818, 836.

[7]In *People v. Marks* (2003) 31 Cal.4th 197, 227, the California Supreme Court held that "application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution, and thus we review allegations of error under the 'reasonable probability' standard" articulated in *Watson*.

not a close case.  Vera's testimony was corroborated by the testimony of the firefighter and paramedic who treated her, the board-certified maxillofacial surgeon who performed the corrective surgery, and the officers assigned to investigate the incident.  More particularly, Vera told Engineer Wallace, Paramedic Becerra, Officer Tsaris, and Detective Martha Rodriguez that defendant caused her injuries.  A number of exhibits admitted into evidence depicted Vera and the injuries she sustained on the date of the incident with defendant.  Additional photographs depicted Vera's injuries shortly after the incident, but before corrective surgery.  Surgeon Brian Woo testified the force required to cause the fractures to the jaw sustained by Vera were "[m]ore likely" caused by a direct blow or "punch" to the jaw rather than an indirect blow, such as defendant's elbow making contact during a shrugging motion.  In light of this evidence, any error was harmless beyond a reasonable doubt and it was not reasonably probable defendant would have received a more favorable result had the evidence been excluded.

**DISPOSITION**

The judgment is affirmed.