[No. A083896. First Dist., Div. Two. Feb. 1, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTOINE MAURICE BROWN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III, subsections D, E and F of the Discussion.

**COUNSEL**

Wesley A. Van Winkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin and Michael E. Banister, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## RUVOLO, J.—

### I.

### INTRODUCTION

Appellant Antoine Maurice Brown was convicted by jury of numerous offenses resulting from his violent assault on his girlfriend during a domestic dispute.[1] Brown noticed this appeal after being sentenced to 23 years in state prison as a "second strike" offender under California's "Three Strikes" law (Pen. Code, § 667, subds. (b)-(i)). In the published portion of this opinion, we consider numerous contentions regarding Evidence Code section 1109,[2] which was enacted in 1996 and allows admission of "evidence of [a] defendant's commission of other domestic violence" in a criminal action in which the defendant "is accused of an offense involving domestic violence." Specifically, we consider Brown's contention that the admission of his prior acts of domestic violence under section 1109 deprived him of his constitutional right to a fair trial under the due process clause. (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 15.) We also consider Brown's argument that the court's instructions regarding this evidence permitted the jury to find him guilty without finding beyond a reasonable doubt that he committed the charged offenses. Finally, we decide whether the trial court should have excluded evidence of his prior acts of domestic violence under section 352, which provides that evidence may not be admitted if its probative value is substantially outweighed by its prejudicial effect.

Shortly after this appeal was fully briefed, our Supreme Court decided *People v. Falsetta* (1999) 21 Cal.4th 903 [89 Cal.Rptr.2d 847, 986 P.2d 182] (*Falsetta*) ▇ In *Falsetta*, the court held that propensity evidence may be considered in sex crime cases under section 1108 without violating the due process clause because section 1108's incorporation of the section 352 balancing test prevents an unfair trial. Furthermore, *Falsetta* rejected a claim that the instructions given in that case lessened the prosecution's burden of proving the charged offenses beyond a reasonable doubt. Although the particular statute analyzed in *Falsetta*, section 1108, governs the admissibility of prior acts of sexual misconduct as distinguished from prior acts of

---

[1]Brown was convicted of assault with a firearm (Pen. Code, § 245, subd. (a)(2)); false imprisonment (Pen. Code, § 236); possessing a firearm within 10 years following a conviction for a misdemeanor (Pen. Code, § 12021, subd. (c)(1)); assault with a deadly weapon (a knife) (Pen. Code, § 245, subd. (a)(1)); and being a felon in possession of a firearm (Pen. Code, § 12021, subd. (a)). Various arming and use enhancements were also found true.

[2]All undesignated statutory references are to the Evidence Code.

domestic violence, we conclude the proper determination of the section 1109 issues raised by Brown is governed by *Falsetta* and its rationale.

In the unpublished portion of this opinion, we consider Brown's claim that the prosecutor and the trial court erred in refusing to grant immunity to a defense witness. Additionally, we consider several claims of instructional error with regard to the offenses of assault with a firearm and assault with a deadly weapon.

We reject all of these arguments and affirm the judgment.

## II.

### FACTS AND PROCEDURE

At trial, the chief prosecution witness was the victim of the assault, Lisa Haynes. Haynes testified that at the time of the assault, she had been in an intimate relationship with appellant Brown for about six months. During the course of their relationship, Haynes sometimes spent the night with Brown at a house he shared with Mahlika Chavis, his "cousin or godsister." On March 10, 1998, Haynes spent the night at Brown's residence. The next day, while she was at work, she received a telephone call from Brown. He accused her of being unfaithful because he had gone through her personal belongings and found a cell phone contract and a receipt dated sometime in December. Haynes recalled Brown said something to the effect, "I found the cellular phone bill contract and a receipt that you bought the next nigger something for Christmas." She refused to speak with him any further by telephone. Angered, she drove from work to Brown's home during her lunch break to retrieve her belongings. They argued again at the front door. When Haynes went into Brown's home to retrieve her personal property, Brown produced a weapon with a loaded ammunition clip that looked like an AK-47. Brown made a reference to killing them both, and Haynes turned her back to hide her frightened reaction. As she walked to the bedroom where her possessions were, she heard a clicking noise from the gun behind her. Haynes grabbed a bag belonging to her and tried to leave the bedroom. Brown grabbed her by the hair, causing her to fall on her back. He then struck Haynes two or three times in the face with something heavy and hard, causing a chipped tooth and a wound above her eyebrow. She started to bleed profusely.

Brown then placed the weapon aside and armed himself with two knives. He held the knives about an inch from Haynes's face saying, "Now, I'll have to cut you up and eat you like the guy did to his girlfriend that was on TV." Haynes tried to keep Brown calm. He noticed how badly she was bleeding

and began to apologize, saying he loved her and that he was sorry. He cleaned her up and bandaged her eye. She asked him several times if she could leave, but he said no. Finally, after promising not to call the police, Haynes left the house by herself and drove back to her jobsite. A coworker drove her to the hospital, where she needed 15 to 20 stitches to close the wound above her eye.

Haynes reported the incident to the police. Officer Helene Schmitt interviewed Haynes, who reported that her boyfriend had assaulted her with an AK-47 by striking her in the face with the butt end of the weapon. Officer Schmitt noticed that Haynes's right eye was swollen and was turning purple and blue. She appeared to have fresh stitches across her eyebrow.

Police reported to Brown's home. Brown was there and was immediately arrested. Mahlika Chavis, Brown's roommate, consented to a search of the house she shared with Brown. The police located 38 live rounds of ammunition in a clip belonging to a weapon that was stashed in a bedroom closet. That weapon was identified at trial as a Norinco assault rifle, which is a "copycat" of the AK-47.

At trial, in addition to the above, the prosecution presented the testimony of two women Brown allegedly battered in 1994 and 1996 respectively—Shelissa Smith and Toni Dawkins. Smith testified that during an argument with Brown over telephone contact with her child's father, Brown had either kicked or hit her in the back, causing her to chip her teeth on a light switch. He then struck and choked her while she lay on the floor. Dawkins testified that during an argument about visitation with their four-year-old son, Brown had grabbed her, causing both of them to fall over a porch railing and land on a brick paved area. She testified that Brown then choked her and struck her head on the pavement.

In Brown's defense, the jury was read Mahlika Chavis's testimony from the pretrial suppression hearing. The jury was told she was unavailable to testify at trial. During Chavis's testimony, she indicated she shared a house with Brown and described their relationship as "really long-time friends, close family." Around noon on March 11, 1998, she was at home and heard a lot of noise downstairs. She saw Brown and Haynes in the kitchen. Haynes was "basically going off, enraged, yelling and screaming and jumping." Once Chavis walked into the room, the argument ceased. Brown then placed some of Haynes's belongings on the floor in front of Haynes, and then

walked out. Neither Haynes nor Brown was cut or hurt in any way. She left the house in time to get to work by 4:00 p.m.[3]

In closing, defense counsel attempted to capitalize on the fact that Haynes had been charged with one felony count of welfare fraud and two felony counts of perjury stemming from events unrelated to this incident. Defense counsel argued: "What's being offered to you is uncorroborated testimony of an accused perjurer who was angry at her boyfriend, and based on that uncorroborated evidence nobody else substantiates what she says." He urged the jury to keep in mind these points: "uncorroborated testimony, no lab work, nothing to protect Mr. Brown, and the testimony of Miss Chavis."

After the jury returned its guilty verdicts, the prosecution presented proof that Brown had suffered a prior felony conviction, a 1994 conviction in Contra Costa County for assault with force likely to produce great bodily injury and personal infliction of great bodily injury. After Brown's prior felony conviction was found true by the jury, it was used to bring him within the Three Strikes sentencing scheme. (Pen. Code, § 667, subd. (e)(1);[4] see also Pen. Code, § 1170.12, subd. (c)(1).) Brown was sentenced to a total unstayed prison term of 23 years as a "second strike" offender. The sentence was computed as follows: Brown received the aggravated term of four years for the assault with a firearm conviction (Pen. Code, § 245, subd. (a)(2)), doubled to eight years under the Three Strikes law (Pen. Code, § 667, subd. (e)(1)). He also received a consecutive 10-year term for the personal use with a firearm finding (Pen. Code, §§ 12022.5, 1203.06), and a consecutive five-year enhancement for the prior conviction. This appeal followed.

## III.

### DISCUSSION

A. *Propensity Evidence Under Section 1109*

Over Brown's objection, evidence of his violence toward two other girlfriends, predating the charged offense against Haynes, was admitted into evidence pursuant to section 1109, which allows admission of evidence of

---

[3]During Haynes's testimony, she denied seeing anyone else at Brown's house on the day of the assault, including Mahlika Chavis.

[4]Penal Code section 667, subdivision (e)(1), which governs second strike felony convictions, provides: "(1) If a defendant has one prior felony conviction that has been pled and proved, the determinate term . . . shall be twice the term otherwise provided as punishment for the current felony conviction." As defined by Penal Code section 667, subdivision (d)(1), a prior felony conviction constitutes a first strike if it qualifies as either a violent felony under Penal Code section 667.5 or a serious felony under Penal Code section 1192.7.

prior acts of domestic violence to prove propensity.[5] The jury was instructed that if it found Brown had committed the prior, uncharged offenses, it could infer that Brown had a "disposition to commit offenses involving domestic violence." (CALJIC No. 2.50.02.) Furthermore, if such a predisposition was found, then the jury was allowed to infer that Brown "was likely to commit and did commit the crimes" with which he was currently charged. (*Ibid.*) Additionally, the jury was instructed that the prosecution only had to prove the uncharged offenses by a preponderance of the evidence. (CALJIC No. 2.50.1.)

██ Brown contests the constitutionality of both section 1109 and the jury instructions given in this case. Specifically, he contends that section 1109 violates due process. He argues: "The evidence of prior uncharged acts permitted the jury to find appellant guilty on the basis of a supposed propensity to commit such acts, and the due process clause does not permit criminal defendants to be convicted on the basis of propensity evidence." Brown also claims the trial court failed to instruct the jury properly regarding its consideration of uncharged acts of domestic violence allegedly committed by Brown. He argues "that CALJIC No. 2.50.1, in combination with CALJIC No. 2.50.02, reduced the prosecution's burden of proof to a standard below that which due process permits."

Brown's arguments have been eclipsed by our Supreme Court's recent decision in *Falsetta, supra,* 21 Cal.4th 903, which has been the subject of supplemental briefing. *Falsetta* upheld the constitutionality of section 1108, a provision that mirrors section 1109, except that it permits the admission of a defendant's past sex crimes for the purpose of showing a propensity to commit offenses of the same type.

In rejecting the argument that section 1108 offends due process, the *Falsetta* court relied on reasoning articulated in *People v. Fitch* (1997) 55 Cal.App.4th 172, 178-185 [63 Cal.Rptr.2d 753]. The *Falsetta* court reasoned, "As stated in *Fitch,* '[S]ection 1108 has a safeguard against the use of uncharged sex offenses in cases where the admission of such evidence could result in a fundamentally unfair trial. Such evidence is still subject to exclusion under . . . section 352. . . . By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature

---

[5]Section 1109, subdivision (a) provides: "Except as provided in subdivision (e), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Section 1109, subdivision (e) provides: "Evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice."

has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. . . . This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence. [Citation.] *With this check upon the admission of evidence of uncharged sex offenses in prosecutions for sex crimes, we find that . . . section 1108 does not violate the due process clause.'* [Citation.]" (*Falsetta, supra*, 21 Cal.4th at pp. 917-918, original italics.)

Brown argues that the principles underlying the *Falsetta* opinion, "a case which dealt solely with sexual offense evidence," are "obviously inapplicable in a domestic violence case." To the contrary, we find the reasoning underlying the *Falsetta* opinion applies to this case because sections 1108 and 1109 can properly be read together as complementary portions of the same statutory scheme. A bill analysis prepared for those who voted to enact section 1109, states that "[t]his section is modeled on the recently enacted Evidence Code 1108, which accomplishes the same for evidence of other sexual offenses, in sexual offense prosecutions." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1876 (1995-1996 Reg. Sess.) June 25, 1996, p. 3.) The analysis goes on to indicate, "Proponents argue that in domestic violence cases, as in sexual offense cases, special evidentiary rules are justified because of the distinctive issues and difficulties of proof in this area. Specifically, evidence of other acts is important in domestic violence cases because of the typically repetitive nature of domestic violence crimes, and because of the acute difficulties of proof associated with frequently uncooperative victims and third-party witnesses who are often children or neighbors who may fear retaliation from the abuser and do not wish to become involved." (*Id.* at p. 4.)

■ "[I]t is reasonable to infer that those who actually voted on the proposed measure read and considered the materials presented in explanation of it, and that the materials therefore provide some indication of how the measure was understood at the time by those who voted to enact it." (*Hutnick v. United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].) ■ Consequently, we can rely on the inference that, by enacting sections 1108 and 1109, the obvious intention of the Legislature was to provide a mechanism for allowing evidence of past sexual offenses or acts of domestic violence to be used by a jury to prove that the defendant committed the charged offense of the same type; recidivist conduct the Legislature has determined is probative because of its repetitive nature. Furthermore, it is apparent that the Legislature considered the difficulties of proof unique to the prosecution of these crimes

when compared with other crimes where propensity evidence may be probative but has been historically prohibited.[6]

Both sections 1108 and 1109 require *"pretrial notice* of the offenses sought to be proved, assuring that the defendant will not be surprised or unprepared to rebut the proposed evidence." (*Falsetta, supra,* 21 Cal.4th at p. 916, original italics; see §§ 1108, subd. (b), 1109, subd. (b).) Furthermore, both sections 1108 and 1109 limit the admissibility of evidence of prior misconduct if its probative value is substantially outweighed by its prejudicial effect. (§§ 352, 1108, subd. (a), 1109, subd. (a).) The specific retention of the power to exclude evidence under section 352, found in both sections 1108 and 1109, provides "a realistic safeguard that ensures that the presumption of innocence and other characteristics of due process are not weakened by an unfair use of evidence of past acts." (*People v. Harris* (1998) 60 Cal.App.4th 727, 730 [70 Cal.Rptr.2d 689].) Accordingly, we hold that *Falsetta*'s pronouncement that "the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from [a] defendant's due process challenge" is fully applicable to section 1109 as well. (*Falsetta, supra,* 21 Cal.4th at p. 917.)[7]

B. *Claimed Instructional Error Relating to Section 1109*

Brown also contends that the trial court's instructions were confusing and allowed the jury to convict him of the current offense based on a prior offense of domestic violence proved by a preponderance of the evidence. With respect to the evidence of Brown's alleged prior acts of domestic violence, the challenged instructions state in pertinent part: "Evidence has been introduced for the purpose of showing that the defendant engaged in an offense involving domestic violence on one or more occasions other than that charged in the case." The instructions go on to state: "If you find that the defendant committed a prior offense involving domestic violence, you may infer that the defendant had a disposition to commit offenses involving domestic violence. If you find that the defendant had this disposition, you may also infer that he was likely to commit and did commit the crimes charged against him. However, evidence that the defendant committed prior offenses involving domestic violence is not sufficient by itself to prove that he committed the charged offenses. The weight and significance of the evidence, if any, are for you to decide. [¶] Within the meaning of the

[6]The language of section 1109 mirrors that of section 1108, and both sections are specifically omitted from section 1101, which generally excludes evidence of prior bad acts to prove a defendant's criminal disposition. (§ 1101, subd. (a).)

[7]Our colleagues in the Third District recently reached the same conclusion in *People v. Johnson* (2000) 77 Cal.App.4th 410 [91 Cal.Rptr.2d 596].

preceding instruction, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed an offense involving domestic violence other than those for which he is on trial. [¶] You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other offense involving domestic violence."

Brown contends these instructions violated his right to due process because they allowed the jury to find his alleged prior acts of domestic violence to be true by a preponderance of the evidence, and allowed the jury to infer from that finding that he committed the charged offenses. Thus, according to Brown, the jury could have found him guilty under a standard that was less than beyond a reasonable doubt.

Brown must establish a reasonable likelihood that the jury misunderstood the instructions as a whole. (*People v. Cain* (1995) 10 Cal.4th 1, 36 [40 Cal.Rptr.2d 481, 892 P.2d 1224].) Contrary to Brown's argument, the instructions given in this case did not allow the jury to infer that he committed the charged crime solely from proof that he committed the prior acts of domestic violence. To the contrary, the instructions expressly provided that "evidence that the defendant committed prior offenses involving domestic violence is not sufficient by itself to prove that he committed the charged offenses." This language essentially tracks the 1999 revised version of CALJIC No. 2.50.02, which *Falsetta* indicated "adequately sets forth the controlling principles" for the jury's use of other crimes evidence. (*Falsetta, supra,* 21 Cal.4th at p. 924.) The *Falsetta* court specifically noted that an admonishment "not to convict defendant solely in reliance on the evidence that he committed prior sex offenses," will help "assure that the defendant will be tried and convicted for his present, not his past, offenses." (*Id.* at p. 923.)

Moreover, a review of the record reveals a consistent message from the instructions as a whole and from the closing arguments—that is, the jury must find Brown guilty beyond a reasonable doubt before it could convict him of any of the charged offenses. The proper reasonable doubt standard was emphasized many times in the instructions and arguments. Neither counsel even hinted that guilt might be based on proof by a preponderance of the evidence. Accordingly, on the instant record, no reasonable likelihood exists that the jury believed it could convict appellant on a lower standard. (See *Falsetta, supra,* 21 Cal.4th at pp. 924-925 [applying *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] standard to instructional error on jury's use of uncharged crimes].)

We realize this conclusion is contrary to that reached by the Second District in *People v. Vichroy* (1999) 76 Cal.App.4th 92 [90 Cal.Rptr.2d 105],

petition for review filed December 14, 1999 (*Vichroy*). *Vichroy* examined a modified version of CALJIC No. 2.50.01, which contained the admonition, "You may not convict [a defendant] merely because you believe he committed another offense . . . . The question before you is whether the defendant is guilty of the crime charged in this case, not whether he is guilty of any other offense. You may return a verdict of guilty only if you are convinced beyond a reasonable doubt that he committed the offense charged against him in this case." (76 Cal.App.4th at p. 100, fn. 5.) The court held this did not clear up the confusion engendered by giving CALJIC No. 2.50.01, and "[b]ecause we cannot assume the jury followed the constitutionally correct conflicting instruction, the judgment must be reversed." (*Vichroy*, *supra*, at p. 101.) Although *Vichroy* was decided after our Supreme Court's opinion in *Falsetta*, it does not analyze the claimed error in the jury instructions in light of the guidance provided by that case. In addition to the quotes already cited, we note, in *Falsetta*, the Supreme Court expressed the further view that the instruction given in this case guiding the jury's consideration of Brown's other acts of domestic violence "contains language appropriate for cases involving the admission of disposition evidence." (*Falsetta*, *supra*, 21 Cal.4th at p. 922.). We are aware the Supreme Court tempered its endorsement of the 1999 revised version of CALJIC No. 2.50.02, by indicating the issue was not squarely presented in the case it was reviewing. (*Falsetta*, *supra*, at p. 924.) ▉ However, even dictum from our Supreme Court is considered "highly persuasive." (See, e.g., *People v. Wade* (1996) 48 Cal.App.4th 460, 467 [55 Cal.Rptr.2d 855]; *People v. Aguilar* (1997) 58 Cal.App.4th 1196, 1209 [68 Cal.Rptr.2d 619].) ▉ We believe it is improbable that the California Supreme Court would suggest an instruction "adequately sets forth the controlling principles" for considering other crimes evidence, and then find that same instruction to be constitutionally defective. (*Falsetta*, *supra*, 21 Cal.4th at p. 924.)

As a separate claim of error in the instructions on the use of prior acts of domestic violence, Brown notes that while the admission of prior acts of domestic violence as propensity evidence "may be logical" when the charged offense is for a similar act of domestic violence, "[t]he incidents of uncharged domestic violence introduced against him simply have no logical relevance to the firearm or weapon possession charges . . . . However, the jurors were plainly told that they could infer from that evidence that he did in fact commit all five of the charged offenses." Thus, he claims, "due process requires that the court explain to the jury specifically which crimes the prior incidents may be used to inferentially establish."

In the absence of a request, the court had no sua sponte duty to give such a limiting instruction. (See § 355.) The record reflects Brown did not request

one. In any event, as noted, the court instructed the jurors that if they found Brown committed a prior act of domestic violence, "you may infer that [Brown] had a disposition to commit offenses involving domestic violence." By its own terms, the instruction was not applicable to the charged weapons offenses. Moreover, the prosecutor discussed the prior acts of domestic violence only in the portion of his argument regarding Brown's assault on Lisa Haynes. These circumstances convince us there was little risk the jury might have been confused. Therefore, we do not find a reasonable probability the jury would have returned a more favorable verdict on the weapons charges had a limiting instruction been given.

## C. *Admission of Evidence Under Section 352*

 Brown next contends that, *even if* admitting evidence of other acts of domestic violence under section 1109 comports with his constitutional right to due process of law, and *even if* the jury was properly instructed regarding its consideration of this evidence, the evidence still should have been excluded pursuant to section 352. As already noted, section 1109 expressly permits a trial court to exclude evidence of other crimes under section 352. That provision gives the court discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) "Under . . . section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124 [36 Cal.Rptr.2d 235, 885 P.2d 1].) A trial court's exercise of its discretion under section 352 " 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citations.]" (*People v. Rodrigues, supra*, at p. 1124.) Brown argues: "Although the incidents introduced into evidence were not particularly remote in time, nor was the evidence particularly time-consuming when compared to the rest of the trial, the evidence had little probative value. . . . [T]he prior incidents merely showed that appellant had previously battered women with whom he was living or had been romantically involved."

To our knowledge, there is only one published case reviewing a trial court's exercise of its section 352 discretion in deciding whether to admit evidence offered under section 1109. In *People v. Poplar* (1999) 70 Cal.App.4th 1129 [83 Cal.Rptr.2d 320], the court found no abuse of discretion in admitting evidence of the defendant's prior acts of domestic

violence in a prosecution for forcible rape of his live-in girlfriend. In each prior incident of domestic violence, there had been a family-type relationship, a breakup, and then the defendant had threatened the victim through phone calls or urging the victim to change her story. On appeal, the defendant challenged the admission of this evidence of past offenses on the grounds that such evidence was highly inflammatory and lacked probative value because it was factually dissimilar to the charged offense. The appellate court rejected these arguments, finding defendant's attempt to subject the admission of this evidence to the exacting standards governing admission of evidence under section 1101, subdivision (b), to be inappropriate because the evidence was independently admissible pursuant to section 1109. The court noted the testimony of the other victims was no more inflammatory than that of the girlfriend describing the rape. Furthermore, there was no probability of confusing the jury with testimony regarding other incidents, which were relatively recent, and the evidence was extremely probative and was not of the sort to evoke an emotional bias against defendant. (70 Cal.App.4th at p. 1139.)

The decision in *Poplar* endorses the balancing determination under section 352 made by the trial court in this case. Before admitting the evidence of the assaults on other victims, the trial judge held a hearing during which he considered the parties' written motions. The trial judge gave a lengthy explanation of his reasons for admitting the testimony. Given the care with which the judge treated the evidence, we see no abuse of discretion in the trial judge's conclusion that the probative value of the evidence was not substantially outweighed by the danger of undue prejudice. The evidence of past offenses was not inflammatory, and there was no risk of confusion because the prior acts of domestic violence were less serious than the charged act. Furthermore, as Brown concedes, the prior acts were not remote nor did evidence about these acts consume much time at trial. The past acts were determined by section 1109 to be highly probative. Accordingly, admission of the evidence of the prior acts of domestic violence was not an abuse of discretion.

D.-F.*

. . . · . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1324.

## IV.

### DISPOSITION

The judgment is affirmed.

Kline, P. J., and Haerle, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 10, 2000.