Filed 8/21/14  P. v. Holland CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

---

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

---

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C073483 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F6380) |
| v. | |
| PAUL LEN HOLLAND, | |
| Defendant and Appellant. | |

A jury convicted defendant Paul Len Holland of possession of an assault weapon. (Pen. Code, former § 12280, subd. (b).)[1]  The trial court suspended imposition of sentence and placed defendant on three years' formal probation with 120 days in county jail and one day of presentence credit.

On appeal, defendant contends (1) there was insufficient evidence that defendant knew the weapon was an assault rifle to support the conviction, (2) the trial court's

---

[1] Undesignated statutory references are to the Penal Code.

1

instruction on possession of an assault rifle violated his right to have the jury determine each element of the offense, (3) it was an abuse of discretion to admit evidence of uncharged misconduct, and (4) the probation conditions regarding the use of controlled substances were not reasonably related to his offense. We affirm.

## FACTUAL BACKGROUND

On August 18, 2011, Department of Justice Special Agent Matthew Badgley participated in a multi-agency execution of a federal search warrant for marijuana cultivation and distribution on defendant's split parcel of land in Redding. There were numerous growing areas throughout the property. The marijuana plants were about 50 to 80 yards away and not visible from the main residence.

Agent Badgley entered the main residence and saw defendant walking out of a bedroom. He ordered defendant to the ground in preparation for a search of the bedroom. Agent Badgley asked defendant, "Is there anything in this room you don't want me to find? Or is there anything in this room that is going to get you in trouble?" Defendant replied there was a rifle behind the door and said, "I know if there is anything I would get in trouble for, it was that gun." He also said that he "was getting ready to take it out of state."

An unregistered AK-47 assault rifle was found behind the bedroom door. It had a pistol grip; a loaded, detachable 30-round magazine inserted into the weapon; and a flash suppressor attached to the barrel. The pistol grip and flash suppressor placed the weapon within the meaning of California's assault rifle ban. The AK-47 was subsequently test fired and found to be operational.

Michael H., defendant's neighbor, testified for the defense. He described himself as a "gun person." When Josh Whites rented a room from defendant, Michael, who was 15 years old at the time, saw the AK-47 in the back seat of Whites's car as he helped move Whites in. Michael would not carry the weapon into the house because he knew it was illegal.

2

# DISCUSSION

## I

Defendant contends there is insufficient evidence that he knew the AK-47 was an illegal assault weapon.

Former section 12280, subdivision (b) provides, in pertinent part: "Any person who, within this state, possesses any assault weapon, except as provided in this chapter, shall be punished by imprisonment in a county jail for a period not exceeding one year, or by imprisonment in the state prison."[2] An assault weapon is defined as including "[a]ll AK series including, but not limited to . . . [¶] . . . AK47" (former § 12276, subd. (a)(1)(A))[3] and "[a] semiautomatic, centerfire rifle that has the capacity to accept a detachable magazine" and a thumbhole stock, folding or telescoping stock, grenade or flare launcher, flash suppressor, or forward pistol grip (former § 12276.1, subd. (a)(1)(A)-(F)).[4] "In a prosecution under section 12280[, subdivision] (b), that is to say, the People bear the burden of proving the defendant knew or reasonably should have known the firearm possessed the characteristics bringing it within the" statutory definition of proscribed assault weapon. (*In re Jorge M.* (2000) 23 Cal. 4th 866, 887 (*Jorge M.*), italics omitted.)

---

[2] After defendant's crime, former section 12280, subdivision (b) was repealed and reenacted without substantive change as section 30605. (Stats. 2010, ch. 711, § 4 [repealing Pen. Code § 12280]; Stats. 2010, ch. 711, § 6 [adding Pen. Code § 30605].)

[3] After defendant's crime, former section 12276, subdivision (a) was repealed and reenacted without substantive change in section 30510. (Stats. 2010, ch. 711, § 4 [repealing Pen. Code § 12276]; Stats. 2010, ch. 711, § 6 [adding Pen. Code § 30510].)

[4] After defendant's crime, former section 12276.1, subdivisions (a) through (c) were repealed and reenacted without substantive change as section 30515. (Stats. 2010, ch. 711, § 4 [repealing Pen. Code § 12276.1]; Stats. 2010, ch. 711, § 6 [adding Pen. Code § 30515].)

On appeal, "[t]o determine whether the prosecution has introduced sufficient evidence to meet [the reasonable doubt] burden, courts apply the 'substantial evidence' test. Under this standard, the court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence– that is, evidence which is reasonable, credible, and of solid value–such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] The focus of the substantial evidence test is on the whole record of evidence presented to the trier of fact, rather than on ' "isolated bits of evidence." ' [Citation.]" (*People v. Cuevas* (1995) 12 Cal.4th 252, 260-261, italics omitted.)

"[T]he Legislature presumably did not intend the possessor of an assault weapon to be exempt from the [Assault Weapon Control Act's] strictures merely because the possessor did not trouble to acquaint himself or herself with the gun's salient characteristics. Generally speaking, a person who has had substantial and unhindered possession of a semiautomatic firearm reasonably would be expected to know whether or not it is of a make or model listed in [former] section 12276 or has the clearly discernable features described in [former] section 12276.1. At the same time, any duty of reasonable inquiry must be measured by the circumstances of possession; one who was in possession for only a short time, or whose possession was merely constructive, and only secondary to that of other joint possessors, may have a viable argument for reasonable doubt as to whether he or she either knew or reasonably should have known the firearm's characteristics." (*Jorge M., supra*, 23 Cal.4th at p. 888.)

Defendant distinguishes the facts in this case from other decisions finding sufficient evidence of the mens rea for possession of an assault weapon. (See *Jorge M., supra*, 23 Cal.4th at p. 888 [" 'Russia SKS-45' " printed or engraved on weapon]; *People v. Nguyen* (2013) 212 Cal.App.4th 1311, 1316 (*Nguyen*) [defendant had box containing parts necessary to build an AK-47, purchased from, among others, "AK-Builder.com"].) He claims defendant's statement to Agent Badgley may have shown he

4

knew the firearm was illegal in California, but not that it was an assault weapon. Since there was no evidence of how the firearm was procured or that defendant knew it was an AK-47, defendant concludes there was insufficient evidence of mens rea to support his conviction.

"We could not disagree more." (*Nguyen, supra*, 212 Cal.App.4th at p. 1324.) Defendant's statements to Agent Badgley identifying the AK-47 behind the door as the weapon that was going to get him in trouble and that he had intended to move it out of state support an inference that he was familiar with the weapon and knew of its illegal nature, and therefore "had substantial and unhindered possession" of the weapon, sufficient to support a finding that he knew or reasonably should have known it was on the list of proscribed assault weapons.

## II

Defendant contends the trial court's instruction on the elements of possession of an assault rifle violated his right to due process.

The trial court instructed the jury on possession of an assault rifle as follows:

"The defendant is charged with unlawfully possessing an assault weapon, specifically an AK-47 Assault Rifle, in violation of section 12280[, subdivision (b)] of the Penal Code.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant possessed an assault weapon, specifically an AK-47 Assault Rifle.

"2. The defendant knew that he possessed it;

"and

"3. The defendant knew or reasonably should have known that it had characteristics that made it an assault weapon.

"An Assault weapon means the following designated semiautomatic firearms:

"All of the following specific rifles:  All AK-47 series, including, but not limited to, the models identified as

"(A)  Made in China AK, AKM, AKS, AK47, AK475, 56, 56S, 84S, and 86S.

"(B)  Norinco 56, 56S, 84S and 86S.

"(C)  Poly Technologies AKS and AK47.

"(D)  MAADI AK47 and ARM.

" 'Series,' as used in this instruction includes all other models, that are only variations, with minor differences, of those models listed above, regardless of the manufacturer.

"An 'assault weapon' also means any of the following:

"A centerfire rifle that has the capacity to accept a detachable magazine and any one of the following:

"1.  A pistol grip that protrudes conspicuously beneath the action of the weapon;

"2.  A thumbhole stock;

"3.  A folding or telescoping stock;

"4.  A grenade launcher or flare launcher;

"5.  A flash suppressor;

"6.  A forward pistol grip."

Defendant contends the language in the first paragraph, "the People must prove that:  [¶]  1.  The defendant possessed an assault weapon, specifically an AK-47 Assault Rifle," violates his right to due process by relieving the People's burden of proving that the weapon was in fact an assault rifle.

Defendant is wrong.  As previously noted, an AK-47 is an assault rifle under California law.  (See former § 12276, subd. (a)(1)(A) ["[a]ll AK series including, but not limited to . . .  [¶]  . . . AK47" are assault rifles].)  The jury was instructed that the People had to prove beyond a reasonable doubt that defendant possessed an assault rifle, and that

6

an AK-47 is an assault rifle. This correctly stated the element of the offense in question and the People's burden of proving it.

### III

Defendant asserts it was an abuse of discretion to admit, over his objection, evidence of the cultivation and possession of marijuana on his property.

Evidence Code section 1101, subdivision (b) permits admission of uncharged misconduct when the evidence is relevant to establish some fact other than the defendant's character, such as motive, intent, plan, knowledge, or absence of mistake. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393.)

" 'The trial court judge has the discretion to admit such evidence after weighing the probative value against the prejudicial effect. [Citation.] When reviewing the admission of evidence of other offenses, a court must consider: (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant. [Citation.]' " (*People v. Butler* (2005) 127 Cal.App.4th 49, 60.)

We review the trial court's decision to admit uncharged misconduct evidence for abuse of discretion. (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.) A trial court's exercise of its discretion under [Evidence Code] section 352 " ' "must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." [Citations.]' [Citation.]" (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1337, italics omitted.)

The trial court admitted the evidence regarding the marijuana operation on defendant's property as evidence of defendant's motive to possess an assault rifle. Defendant argues the court did not apply the proper balancing test and the evidence was

not relevant to the only "facts in dispute, namely whether [defendant] knew the firearm he possessed had the characteristics of an assault weapon."

While defense counsel argued in closing that whether defendant had the necessary mens rea was the "real issue" in the case, defendant did not stipulate to possessing the AK-47 and presented evidence that the weapon was brought onto his property by a third party, his tenant. People dealing in illegal drugs often carry firearms. (*People v. Glaser* (1995) 11 Cal.4th 354, 367-368.) The presence of a marijuana growing operation on defendant's property thus tends to prove a motive for possessing a firearm. This motive, in turn, supports an inference that defendant had a particular interest in having a more powerful firearm, like an assault rifle, and that he therefore knew the weapon was in fact the illegal and comparatively powerful AK-47. (See *United States v. Stokes* (1st Cir. 2004) 388 F.3d 21, 30 [upholding district court finding that the particular AK-47 and ammunition were " 'extraordinarily dangerous' "].)

Assuming the evidence was admitted in error, the error is harmless. As noted, the weapon was an assault rifle as a matter of law. Defendant's statements that the weapon would get him into trouble and that he meant to take the firearm out of state clearly show he knew it was an illegal assault rifle. It is not reasonably probable defendant would have obtained a more favorable result had the evidence been excluded. (Evid. Code, § 353; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## IV

Defendant's final contention is that the probation conditions related to his use of controlled substances should be stricken because they are not reasonably related to his crime. We disagree.

Among the probation conditions imposed by the trial court were the following:

"11. That he not use or possess any controlled substances unless prescribed by a physician and that any prescriptions be immediately reported by the defendant to the Probation Officer; [and]

8

"12. That he submit his person to chemical testing at any time at the request of any peace officer or Probation Officer, and that he do nothing that would interfere with the accuracy of the test."

Defendant objected to the conditions at sentencing, arguing this is a weapons possession rather than a substance abuse case. On appeal, he argues that being a user of marijuana is by itself insufficient grounds to impose drug testing pursuant to Health and Safety Code sections 11551 and 11552. (Health & Saf. Code, § 11553.) He asserts he had a prescription for marijuana, the legal use and growing of marijuana is not associated with his offense, and his use of marijuana is not associated with any future criminality. From this, defendant concludes the probation conditions were improper.

The trial court has substantial discretion to impose conditions of probation, including drug testing and rehabilitation. "[C]ourts have broad discretion to impose [probation] conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*People v. Lent* (1975) 15 Cal.3d 481, 486.)

The probation report stated that defendant had a "limited history of poly-substance abuse." He obtained a medical marijuana recommendation for a back injury three years before sentencing. He was initially prescribed Oxycodone but did not like how it made him feel. The report concluded that defendant did "not appear to have any substance abuse issues that are causing any problems in his life."

While defendant was not charged with any drug offenses, the AK-47 was found during the execution of a federal search warrant by officers from state and federal agencies on the marijuana growing operation that existed on his property. Defendant

9

may have had a medical marijuana prescription, but there is no evidence that he had any state authorization to grow medical marijuana on his property.

The probation conditions do not prevent defendant from taking legally prescribed medical marijuana or any other legal use of a controlled substance. They prohibit him from only the illegal use of controlled substances. Given the evidence of the potentially illegal growing of marijuana on his property, and the growing operation as a motive for his illegally possessing a firearm, the drug conditions have a relationship to defendant's crime, do not prohibit legal conduct, and are related to deterring future criminality. It was not an abuse of discretion to impose the drug conditions.[5]

**DISPOSITION**

The judgment is affirmed.

                    RAYE            , P. J.

We concur:

        HULL            , J.

        MAURO          , J.

_____

[5] Defendant's reliance on Health and Safety Code section 11553, which provides "[t]he fact that a person is or has been, or is suspected of being, a user of marijuana is not alone sufficient grounds upon which to invoke [Health and Safety Code S]ection 11551 or 11552," is unavailing. Health and Safety Code sections 11551 and 11552 address testing conducted by a physician or a city or county health officer; since the testing here is not conducted by such officials, it is irrelevant to the probation condition. (*People v. Shimek* (1988) 205 Cal.App.3d 340, 343.)

10