Filed 10/23/14  P. v. Huerta CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ARTURO HUERTA,<br><br>    Defendant and Appellant. | F066497<br><br>(Super. Ct. No. BF136504A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Cory J. Woodward, Judge.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Max Feinstat, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

On April 17, 2011, appellant was arrested after Acamea Coy was found murdered in appellant's bedroom. Appellant was charged with first degree murder (Pen. Code, § 187, subd. (a)), and an enhancement alleging the use of a deadly weapon was included (§ 12022, subd. (b)(1)). Following a jury trial, appellant was found guilty of the lesser included offense of second degree murder, and the enhancement was found to be true. Appellant was sentenced to an aggregate term of 16 years to life in prison.

On appeal, appellant argues that (1) there was insufficient evidence to establish that the victim's death was caused by the appellant's actions; (2) there was insufficient evidence to establish that appellant acted with express or implied malice; (3) the trial court abused its discretion by precluding appellant from cross-examining the substitute pathologist about the original pathologist's autopsy conclusions; (4) the trial court abused its discretion by finding evidence of the substitute pathologist's professional habits inadmissible; and (5) the cumulative effect of the alleged errors warrants reversal of appellant's conviction. None of these arguments is persuasive, and the judgment will be affirmed.

## FACTS

Appellant rented a bedroom from Velia Alvarez. On April 17, 2011, Alvarez heard the sounds of an argument coming from appellant's room, and heard a woman's voice yelling "[N]o, no, Arturo, please. I moved with my daughter to 2nd Street." Alvarez then heard the sound of glass breaking and items being thrown around the room and called the police.

When police arrived at the scene, they observed appellant pacing inside his room and evidence of blood on the rear door. The officers then entered the residence from the front and rear entrances, and found appellant standing motionless in the kitchen, covered

in blood, and the body of Acamea Coy in appellant's bedroom. Coy's arms were tied with a necktie, and a scarf was tied around her face. Inside the room there was broken glass on the floor, a glass Cisco bottle, and blood on all of the walls.

Appellant was subsequently arrested and charged with first degree murder. At trial, the substitute pathologist, Dr. Adel Shaker, testified that he believed the victim's cause of death to be exsanguination due to sharp injuries. Appellant testified in his own defense and stated that he did not intend to kill the victim, but that she had struck appellant with a Cisco bottle, and the two had struggled and rolled in the broken glass. He further testified that during the struggle the victim got up, ran into a wall, and fell.

At the conclusion of trial, appellant was found guilty of second degree murder, and was sentenced to 16 years to life in prison. This appeal followed.

## DISCUSSION

**I.     There Was Sufficient Evidence To Establish That The Victim's Death Was The Natural And Probable Consequence Of Appellant's Actions.**

### A.     Standard of Review.

We view the record in the light most favorable to the conviction and presume the existence of every fact in support of the conviction the trier of fact could reasonably infer from the evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.). "Reversal is not warranted unless it appears "'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." [Citation.]' [Citation.]" (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1457.)

### B.     Analysis

In cases of homicide, criminal liability only attaches if the victim's death is the "natural and probable consequence of a defendant's act[.]" (*People v. Roberts* (1992) 2 Cal.4th 271, 321.) On appeal, appellant asserts that there was insufficient evidence to establish that the victim's death was a natural or probable result of appellant's actions, as

3.

appellant struck the victim after she broke a bottle over his head, and appellant could not predict that the victim would then fall on the glass and die from rapid exsanguination.

This argument, however, is based on appellant's version of events and not on a review of the record in the light most favorable to the conviction that presumes the existence of every fact in support of the conviction the trier of fact could reasonably infer from the evidence. Using the appropriate standard of review, there was evidence presented that appellant and the victim were arguing before the victim's death, that the victim was overheard pleading with appellant, and that a bottle was broken during the argument. The evidence also showed the victim was subsequently found dead from exsanguination in a pile of broken glass, and that her hands had been tied and her eyes blindfolded by appellant. All of this evidence, viewed in the light most favorable to the conviction, is sufficient to establish that the victim's injuries and exsanguination were caused by appellant's actions.

Appellant also argues, however, that causation was not established at trial due to Dr. Shaker's testimony that it was equally compelling that the victim died due to the combination of alcohol and cocaine that was in her bloodstream, as it was that she died from exsanguination. While it is true that Dr. Shaker testified that he could not exclude cocaethylene poisoning as a cause of death with medical certainty, he also testified that he believed the victim's death was caused by exsanguination due to sharp injuries, that he assigned a high probability to that causation theory, and that it was the only cause of death he listed on his report.

Viewing this direct and circumstantial evidence in the light most favorable to the conviction, we find there was substantial evidence to support a finding that the victim's death was a natural or probable result of appellant's actions and to support appellant's conviction for second degree murder.

4.

**II. There Was Sufficient Evidence To Establish That Appellant Acted With Implied Malice.**

**A. Standard of Review.**

As previously set forth, the substantial evidence standard of review applies.

**B. Analysis.**

"Second degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder." (*People v. Knoller* (2007) 41 Cal.4th 139, 151.) "Such malice may be either express or implied." (Pen. Code, § 188.) "[W]hen it is proved that the defendant assaulted the victim with a deadly weapon in a manner endangering life and resulting in death, '"malice is implied from such assault in the absence of justifying or mitigating circumstances."' [Citation.]" (*People v. Lines* (1975) 13 Cal.3d 500, 506.)

Here, appellant argues that there was insufficient evidence to establish malice, as hitting the victim with his hands and struggling with the victim do not constitute an assault with a deadly weapon in a manner endangering life. In the alternative, appellant argues that striking the victim with a bottle is also insufficient to establish implied malice, as fatal exsanguination is not a foreseeable consequence of the infliction of superficial wounds.

With regard to the first claim, appellant again assumes his own version of events rather than viewing the evidence in the light most favorable to the conviction. Given the direct and circumstantial evidence supporting a finding that appellant struck the victim with a bottle, the prosecution was under no obligation to show that unarmed blows constituted an assault with a deadly weapon in a manner endangering life. Regarding the second claim, appellant's assertion that a glass bottle is not a deadly weapon is contradicted by applicable case law. In *People v. Cordero* (1949) 92 Cal.App.2d 196, 199, the First District Court of Appeal found that a glass bottle, when used as a club, is a

deadly weapon. Further, Dr. Shaker's testimony established that exsanguination was a possible consequence of superficial wounds, and that the victim in this case did in fact die from such exsanguination.

Therefore, viewing this direct and circumstantial evidence in the light most favorable to the conviction, we find there was substantial evidence to support a finding that appellant acted with malice, and to support appellant's conviction for second degree murder.

**III.    The Trial Court Did Not Err by Precluding Appellant From Cross-Examining Dr. Shaker As To The Conclusions In The Original Pathologist's Autopsy Report.**

**A.    Facts.**

The autopsy in the case was performed by Dr. Wallis, whose autopsy report listed four causes of death: (1) sharp and blunt force trauma; (2) asphyxia; (3) cocaine intoxication; and (4) sickle cell process. When Dr. Wallis was determined to be unavailable for trial, Dr. Shaker was named as the substitute pathologist and submitted a report stating that, based on his review of the file, the sole cause of death was exsanguination from sharp injuries.

Prior to trial, the prosecution filed a motion in limine seeking to prohibit Dr. Shaker from being questioned as to Dr. Wallis's conclusions regarding cause of death. Following a hearing, the trial court stated that Dr. Shaker could be questioned regarding his consideration of other causes of death, but that defense counsel would not be able to "argue that these other causes were causes of death."

At trial, defense counsel asked Dr. Shaker on five occasions whether Dr. Wallis had indicated that the sharp injuries suffered by the victim were fatal, and the trial court sustained the prosecution's objections to all five questions. Outside the presence of the jury, the trial court stated that the questions were improper, as they did not concern why

Dr. Shaker rejected the causes of death listed by Dr. Wallis, but merely sought to introduce Dr. Wallis's conclusions into evidence.

## B. Standard of Review.

The admission or exclusion of evidence is reviewed for an abuse of discretion. (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1337-1338.)

## C. Analysis.

"An expert witness may not, on direct examination, reveal the content of reports prepared or opinions expressed by nontestifying experts." (*People v. Campos* (1995) 32 Cal.App.4th 304, 308.) "[I]f an expert does rely in part upon the opinions of others, the expert may be cross-examined as to the content of those opinions." (*Mosesian v. Pennwalt Corporation* (1987) 191 Cal.App.3d 851, 864, disapproved on another ground in *People v. Ault* (2004) 33 Cal.4th 1250, 1272, fn. 15.)

Here, while Dr. Shaker testified that he relied on Dr. Wallis's autopsy report when determining cause of death, it is not at all clear that he relied on Dr. Wallis's *opinion* as to cause of death when making that determination. In fact, the record reflects that Dr. Shaker rejected three of the four causes of death included in Dr. Wallis's autopsy report.

Therefore, as Dr. Shaker rejected the opinion portion of Dr. Wallis's autopsy report, the trial court did not abuse its discretion by determining that Dr. Shaker did not rely on the opinions of Dr. Wallis, and precluding appellant from cross-examining Dr. Shaker as to those opinions.

Further, even if it could be established that Dr. Shaker did rely on Dr. Wallis's opinion with regard to cause of death, any error in the exclusion of that testimony was harmless. The line of questioning presented by defense counsel concerned whether or not Dr. Wallis had deemed the sharp injuries suffered by the victim to be fatal. While defense counsel may have been asking those questions for impeachment purposes, the

record reflects that, like Dr. Shaker, Dr. Wallis did in fact list sharp force trauma as a cause of death in her autopsy report.

Moreover, appellant was not prejudiced by being unable to use Dr. Wallis's listing of sharp force trauma as a cause of death to introduce the other causes of death found in her report. While appellant was prohibited from introducing Dr. Wallis's conclusions regarding those additional causes of death, he was not prohibited from cross-examining Dr. Shaker about those potential causes of death. Indeed, defense counsel extensively cross-examined Dr. Shaker about the possibility of cocaethylene poisoning, which was listed as cause of death in Dr. Wallis's autopsy report.

Therefore, because Dr. Shaker rejected rather than relied on Dr. Wallis's opinion regarding cause of death, and because any error in precluding defense counsel from cross-examining Dr. Shaker about the contents of Dr. Wallis's autopsy report was harmless and non-prejudicial, appellant is not entitled to relief.

## IV. The Trial Court Did Not Err By Precluding Appellant's Proposed Habit Testimony Concerning Dr. Shaker.

### A. Facts.

During trial, but outside the presence of the jury, the trial court held an Evidence Code section 402 hearing regarding habit evidence offered by the defense. At the hearing, Carley Strauss testified that she had worked with Dr. Shaker as an autopsy assistant, and that Dr. Shaker worked faster than the other three doctors she had worked with. She further testified that Dr. Shaker sometimes had a theory concerning the cause of death before performing the autopsy, but that she did not know what he eventually declared as cause of death.

Following Strauss's testimony, Holly Cameron testified that she had worked with Dr. Shaker as an autopsy assistant, and that he was twice as fast as the other doctors she had assisted. She further testified that, approximately 85 percent of the time, Dr. Shaker

had a theory concerning cause of death before performing the autopsy, and that he changed the initial theory approximately half of the time.

At the conclusion of the hearing, the trial court found Strauss and Cameron's testimony to be inadmissible under Evidence Code section 1104 and of little probative value.

### B. Standard of Review.

As noted above, the admission or exclusion of evidence is reviewed for an abuse of discretion. (*People v. Brown*, *supra*, 77 Cal.App.4th at pp. 1337-1338.)

### C. Analysis.

Under Evidence Code section 1104, "[e]xcept as provided in Sections 1102 and 1103, evidence of a trait of a person's character with respect to care or skill is inadmissible to prove the quality of his conduct on a specified occasion." Sections 1102 and 1103 provide exceptions relating to certain instances of conduct engaged in by the defendant or victim in a criminal proceeding.

Here, the testimony offered by Strauss and Cameron clearly sought to introduce evidence of hastiness on the part of Dr. Shaker that related to his care or skill as a pathologist, and is therefore inadmissible under Evidence Code section 1104. On appeal, appellant attempts to circumvent that fact by asserting that the testimony is admissible evidence of habit or custom under section 1105. That section, however, requires that the offered evidence be "otherwise admissible[.]" As section 1104 explicitly states that "evidence of a trait of a person's character with respect to care or skill is *inadmissible* to prove the quality of his conduct on a specified occasion" (italics added), appellant's argument fails on the merits.

## V. Appellant Was Not Prejudiced By Cumulative Error.

"[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.

9.

[Citations.]" (*People v. Hill* (1998) 17 Cal.4th 800, 844-845.)  Here, appellant argues that the cumulative effect of the errors alleged in his brief justify reversal of his conviction.  As noted above, however, we find the alleged errors in this case were not errors at all and therefore cannot accumulate into prejudicial and reversible error.

## DISPOSITION

The judgment is affirmed.


_____
LEVY, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
PEÑA, J.