Filed 12/1/22  P. v. Guzman CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LEONIDES GUZMAN, <br><br> Defendant and Appellant. | D079867 <br><br><br> (Super. Ct. No. BAF2000929) |

APPEAL from a judgment of the Superior Court of Riverside County, Charles J. Koosed, Judge.  Affirmed in part, vacated in part and remanded.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Leonides Guzman engaged in sexually explicit online conversations with a 13-year-old girl, sent her photographs of his penis, asked for naked photographs of her, and convinced her to meet him near a park to have sex. When Guzman showed up with condoms, and the candy and soda the girl requested, he was arrested. It turned out the girl was an undercover investigator. A jury convicted Guzman of four felony offenses involving sexual misconduct against a minor. The trial court sentenced him to four years in prison, selecting the middle term of three years on the principal count.

On appeal, Guzman contends the trial court abused its discretion when it admitted evidence he had previously engaged in similar sexual offenses against three other underage girls, pursuant to Evidence Code section 1108.[1] He further contends section 1108, as applied, violates his rights to a fair trial and due process under the Sixth and Fourteenth Amendments to the United States Constitution because propensity evidence "erodes" the presumption of innocence. We reject these contentions.

However, we agree with Guzman that remand for resentencing is appropriate under recently-enacted Assembly Bill No. 124 (2021–2022 Reg. Sess.; Stats. 2021, ch. 695, § 5.3) (Assembly Bill 124), which amended Penal Code section 1170 to make a low-term sentence presumptively appropriate when a defendant's "childhood trauma" was a "contributing factor in the commission of the offense." (Pen. Code, § 1170, subd. (b)(6)(A).) The new ameliorative sentencing law applies retroactively to Guzman. And because we are unable to conclude the record clearly indicates the trial court would

---

[1] All further unspecified statutory references are to the Evidence Code.

have imposed the same sentence had it considered the new requirements of Assembly Bill 124, remand is appropriate. We reject Guzman's claim he is entitled to remand under Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) because he was not sentenced to any upper term sentence. We affirm the judgment in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Prosecution's Case*

The prosecution charged Guzman with four counts of misconduct against a minor: attempting to communicate with a minor with the intent to commit a lewd act with a minor under 14 (Pen. Code, § 288.3, subd. (a); count 1); arranging and going to meet with a minor with the intent to engage in lewd behavior (Pen. Code, § 288.4, subd. (b); count 2); attempted production of child pornography with a minor under the age of 14 (Pen. Code, §§ 664, 311.4, subds. (c) & (f); count 3); and distributing harmful material to a minor (Pen. Code, § 288.2, subd. (a)(2); count 4). The prosecution presented its case in under one trial day, calling two investigators and three witnesses who testified regarding Guzman's prior sexual offenses pursuant to section 1108.

A. *Evidence of the Charged Crimes*

Liam Doyle, an investigator for the Riverside County District Attorney's Office, worked on a task force investigating internet crimes against children. As part of an undercover online operation, Doyle created a fake account as a girl named "Destiny" on a dating app called "Flurv." The profile for Destiny showed a picture of a female from her shoulders to her waist, wearing a "Little Mermaid" shirt, and described her as 18 years old.

In August 2020, Destiny received a message from a user named "Andrez," later determined to be Guzman. Guzman made "small talk" and

3

told Destiny he liked her picture. Destiny "[a]lmost immediately" told Guzman she was 13 years old. Still, Guzman told Destiny he wanted to meet her to have sex and he wanted Destiny to perform oral sex on him.

At some point, Destiny asked Guzman "to move to text message." Doyle explained he did this because the dating app screened conversations for underage users and shut down their accounts. As a result, he loses contact with the person and with it, any evidence for the case. Destiny's account was in fact later disabled and deleted, including the record of the messages with Guzman.

Guzman then texted Destiny on the cell phone number that Doyle gave him. He told Destiny "it was Andrez" and they "pick[ed] up where [they] left off." Guzman "continually" said "stuff that was sexual" to Destiny. He said "he wanted to have sex" with her; "[h]e wanted to perform oral sex" on her; "[h]e wanted [her] to perform oral sex" on him. Guzman sent Destiny a picture of his semi-erect penis and asked her, "if [she] wanted to suck it."

Guzman, who was then 27 years old, first told Destiny he was 18. He then said he was 17. So Destiny asked for proof of his age. Guzman responded by sending Destiny a "selfie." In court, Doyle identified Guzman as the man depicted in the selfie with whom he was texting.

"Multiple times" during their conversation, Destiny told Guzman she was 13. She also told him she was in the eighth grade. She "asked him if he was sure that he wanted to do this with a 13-year-old." Guzman sent more pictures of his penis and asked Destiny "what [she] was going to do with it." In response, Destiny told Guzman she "never had sex before and asked him if he'd be okay teaching a 13-year-old what to do." Guzman told Destiny "that he would be okay with that, and that he'll teach [her]."

4

Guzman told Destiny he wanted to meet to have sex with her. Destiny agreed, and he asked her "when would be a good time, when [her] parents left, what day, and scheduled a meeting with [her]." They agreed to meet near a certain dog park[2] on a Wednesday at 10:00 a.m., a time Destiny said her mom would be leaving the home.

Destiny asked Guzman to bring her a Cherry Coke, Skittles, and condoms to their meeting. Doyle explained he asked Guzman to bring these items as a means to eliminate the suspect's ability to claim, "I was just showing up here at random, you guys have the wrong person." Guzman sent Destiny pictures of the soda, candy and condoms he got for her. He again told her he was going to have sex with her, that he was going to perform oral sex on her, and "it would be real good."

The night before their meeting, Destiny told Guzman she had talked to a friend who told her "a lot of people say this online, and it's just a fantasy." She asked Guzman "if this was just fantasy talk that he was doing." Guzman said it was not, and "he was going to show up" and "he was going to have sex with [her] real good."

The morning they were to meet, Guzman texted Destiny and told her to get in the shower and send him nude pictures. The day before, he had asked Destiny for a nude picture without her face and for a "normal picture." Doyle sent him the same profile picture used to create the account and a picture of a "life-like doll laying on a beanbag" that was "fully clothed" with "shorts and a

_____

2      Doyle testified he did not give suspects actual addresses to the meet location, because "[i]t's a mechanism that [they] use to show that they went out of their way to find the location to meet, that it wasn't something we forced them to do." Doyle gave Guzman neither an address to Destiny's home nor to the dog park.

5

shirt" but no face.  Doyle explained he did not send nude pictures of either "minors or young-looking females" to Guzman, because "it's child pornography."

At 10:08 a.m. on the specified Wednesday, Guzman texted Destiny and said he was at the park.  He said the park was "real big" and he wanted to meet Destiny at her house.  Doyle was north of the park in a neighborhood and watching a live feedback from a drone being flown over the park by the local police department.  When he received Guzman's text message, Doyle observed Guzman standing near a white pickup truck.  It was the only vehicle in the parking lot between 10:00 and 10:30 a.m.  Destiny texted Guzman back and said she was going to ride over to the park on her bike.  Doyle watched Guzman get back into his truck, drive into a nearby neighborhood, make a U-turn, and park.

Police officers then arrested Guzman.  They found a Cherry Coke, Skittles, and condoms in his truck.  They also found two cell phones in his truck, an iPhone and a Samsung cell phone that contained the text messages between Destiny and Guzman.[3]  Doyle called the cell phone number he had been using to text with Guzman, and it rang to the Samsung phone.  It was the same cell phone number on the back of Guzman's truck, advertising his business.

---

[3]     At trial, the prosecution presented to the jury and admitted into evidence a video that Doyle had recorded of the text messages Guzman exchanged with Destiny and a document with screenshots of the same messages.  We received these exhibits as part of the record on appeal and have reviewed them in deciding this appeal.

B.    *Evidence of Prior Sexual Offenses*

A warrant search of the two cell phones led to the discovery that Guzman had been texting with two other underage girls.  On the Samsung phone was an app called "Text Free," which allows the user to "have . . . a different phone number then what's associated with their actual primary phone."  Doyle looked through the Text Free app and found texts with "a female" from a number later determined to belong to S.G.  On the iPhone, Doyle found texts with a person whose cell phone number was later determined to belong to G.B.  Her saved contact picture was of a "young female child."  The same picture of the young female child was also the background picture of the iPhone display screen.[4]   A third underage girl, S.H., was found because Guzman had been convicted of misdemeanor statutory rape in 2014.

1.    *S.G.*

S.G. was one month shy of 18 years old at the time of trial.  She started speaking with Guzman over the phone and texting with him in June 2020.  She was 16 years old, and told Guzman so.  He told her he was 21, and his name was "Leo."  They spoke about "sexual" things over text messages.  He told her, "Let's fuck."  Just before her 16th birthday, Guzman asked for her home address.  "He said he was just going to come and keep [her] company."  Though she never saw him outside her house, she believed Guzman showed up because he texted her from outside her house requesting oral sex from her.  But S.G. did not go meet Guzman.  She identified Guzman from a picture he

_____

[4]    When he later testified in his own defense, Guzman admitted the iPhone was his, but claimed the Samsung phone belonged to his friend "Andrez" who left it with him when he went to Mexico.

7

had sent her.  The same picture, and her cell phone number, were found on the Samsung phone.

2.  *G.B.*

G.B. had just turned 18 at the time of trial.  She met Guzman on a dating app in early spring 2018, when she was 15.  Guzman told her his name was "Leonides Guzman" and that he was 18.  She first told Guzman she was 16.  But before they met in person, she told Guzman she was 15.  They ended up having a two-year relationship, during which they had sexual intercourse on "multiple occasions" when she was 15 and 16.  Their "sexual relations" included Guzman touching G.B.'s breasts and "bare vagina."  G.B. confirmed her cell phone number, which was the number associated with the text messages and saved contact picture of the "young female child" found on Guzman's iPhone.

3.  *S.H.*

S.H. was 22 at the time of trial.  In February 2014, at age 14, she met Guzman on Facebook.  Guzman told S.H. his name was "Leo Guzman" and he was 17 years old; his true age was 20.  S.H. told Guzman she was 14.  They chatted with each other for two to three weeks on Facebook.  They discussed "sexual things in general" and Guzman expressed "feelings or love" for S.H.  Guzman then proposed they meet in person at S.H.'s house.  He asked S.H. "about where [her] parents would be at the time" and told her "[h]e didn't mind that they were gone."  He then went to S.H.'s house and had sex with her, four times in February and March 2014.

After her testimony, the trial court read the following stipulation to the jury:  "The parties hereby stipulate that the defendant, Leonides Guzman, has . . . a conviction for the following:  August 28th, 2014, a violation of Penal

8

Code section 261.5, subdivision (d), statutory rape, a misdemeanor against Jane Doe, initials S.H."

II.

*Defense Case*

Guzman testified but presented no other witnesses. He testified there were messages between him and Destiny in a dating app called "Meet Me" that were not among the text messages in the exhibits introduced by the prosecution. He explained Meet Me is "an app for adults that is used to chat and meet."

He has never used the Meet Me app before he began chatting with Destiny. The Samsung phone with the app on it belonged to his friend and business partner, "Andrez." Andrez had left his phone with Guzman when Andrez went to Mexico. Guzman "didn't have anything to do," so he "grabbed the phone" and went into the app and it "already had the profile" set up. After 10 minutes of being in the app, he saw Destiny's message.

It was Destiny who first initiated contact with Guzman. Guzman did not know it was a detective at the time; he believed "it was a 19-year-old girl." He believed Destiny was 19 because "[i]t said there on the app that she was 19." He had also asked Destiny "for some photos" and she sent him "a full body shot of a woman in a bikini holding a California driver's license."[5] The driver's license had the name "Destiny" and it "said she was born in

---

[5]     Doyle had testified he did not send Guzman a picture of a California driver's license of a person named Destiny with a birthdate showing she was 18 years old. Nor did he, posing as Destiny, tell Guzman she was 18 years old, or tell Guzman to "[l]et's play a game and pretend" she was 13 years old. In response, Guzman asserted "[h]e's lying."

9

1999," making her 19 years old. He also believed anyone contacting him on the dating app was over 18 because the service allowed "only people over 18."

Destiny told Guzman she wanted to role play as a 13-year-old girl—"a little girl student"—and that Guzman should pretend to be 18. But this conversation about "playing a game" where Destiny would be 13 occurred only on the app (for which Doyle had testified there is no record because the account was shut down and deleted). Guzman explained that, in the app, Destiny told him "[t]hat she was going to act like she was 13 on the texts" and Guzman should respond by text but that she would respond to him only in the app. Although he thought this was "weird," he "just went along with the game."

Guzman admitted he sent sexually explicit and graphic text messages to Destiny, that included pictures of his penis, but he claimed it was all role play. He denied he was "turned on" by Destiny pretending to be a 13-year-old girl. Indeed, he did not like or enjoy having sex with "underaged girls." He testified he went to the park that day to take a walk with Destiny, not to have sexual intercourse, and they had agreed to meet for a walk during an actual phone conversation.

As for the other underage girls, Guzman testified he believed S.H. was 17 years old when he met her at age 20. They had a "boyfriend/girlfriend relationship" and sex on multiple occasions but he did not enjoy it. He later testified he enjoyed it "[j]ust like normal." He then found out she was really 14 when he was arrested for having sex with her; he later pled guilty to statutory rape of S.H.

Guzman testified G.B. told him she was 17 years old when he met her on a dating app. He admitted he had been "talking to her for about two years" and he met with her more than once, but denied they had sex or any

10

"sexual interaction." He claimed G.B.'s testimony that they had sex was "not true." He last spoke to her "[m]aybe a week" before he was arrested when he went to meet Destiny at the park.

Guzman testified he did not know S.G., had never texted her, or met with her. When asked about the texts with S.G. on the Samsung phone, Guzman again denied the phone was his and asserted it belonged to "Andrez." He testified Andrez was "the one who was actually texting" S.G., using his name "Leo." He could think of no reason why his friend would do that. Guzman admitted he never told Doyle in his post-arrest police interview that Andrez had the Samsung phone during the text exchange with S.G.

Although he testified that Andrez left the Samsung phone with him, Guzman admitted he previously told Doyle that he "bought" the phone from "a friend" "just two days" before his arrest. Another time, he told Doyle he got the phone "off of someone on the street." Yet another time, he testified S.G.'s text messages were on a phone that he "bought" from his friend before he went to Mexico. He admitted he paid the bill every month for the Samsung phone.[6]

### III.

### *Verdicts*

On the morning of the third (and last) day of trial, the trial court instructed the jury and the attorneys presented their closing arguments. Sometime after the noon recess that day, the jury returned with guilty verdicts on all four charged counts. It found Guzman guilty of attempting to

---

[6] The prosecutor played a video recording of Doyle's post-arrest interview of Guzman for the jury during her cross-examination of Guzman.

11

communicate with a minor with the intent to commit a lewd act with a minor under 14 (Pen. Code, § 288.3, subd. (a); count 1); arranging and going to meet with a minor with the intent to engage in lewd behavior (Pen. Code, § 288.4, subd. (b); count 2); attempted production of child pornography with a specific finding the minor involved in this offense was under the age of 14 (Pen. Code, §§ 664, 311.4, subds. (c) & (f); count 3); and distributing harmful material to a minor (Pen. Code, § 288.2, subd. (a)(2); count 4).

## DISCUSSION

## I.

### *Evidence of Prior Sexual Offenses Was Properly Admitted*

The trial court admitted the testimony of S.G., G.B., and S.H. regarding Guzman's prior sexual offenses pursuant to section 1108, subdivision (a), which provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Guzman asserts this was prejudicial error, for two reasons. We reject both.

A.    *Section 1108 Is Constitutionally Valid*

First, Guzman contends section 1108, as applied, violates his rights to a fair trial and due process under the Sixth and Fourteenth Amendments to the United States Constitution because propensity evidence "erodes" the presumption of innocence. The California Supreme Court has already rejected this constitutional challenge, in *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*).

In *Falsetta*, our high court held "[a]lthough this provision represents a deviation from the historical practice of excluding such 'propensity' evidence (see § 1101, subd. (a)), the provision preserves trial court discretion to exclude

the evidence if its prejudicial effect outweighs its probative value (§ 352)." (*Falsetta, supra,* 21 Cal.4th at p. 907.) The Court further noted section 1108 "also provides for pretrial notice to [the] defendant of the evidence to be offered (§ 1108, subd. (b)), disclaims any intent to limit admission of evidence under other provisions (§ 1108, subd. (c)), and defines the various terms used in the provision (§ 1108, subd. (d))." (*Falsetta,* at p. 911.) Thus, "in light of the substantial protections afforded to defendants in all cases to which section 1108 applies," the Court saw "no undue unfairness in its limited exception to the historical rule against propensity evidence." (*Falsetta,* at pp. 915–916.) The Court "conclude[d], consistent with prior state and federal case law, that section 1108 is constitutionally valid." (*Falsetta,* at p. 907.)

Our high court has since reaffirmed *Falsetta,* again holding that " 'the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from [the] defendant's due process challenge.' " (*People v. Wilson* (2008) 44 Cal.4th 758, 797.) We are bound by these rulings (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), and accordingly, we reject Guzman's constitutional challenge to section 1108.

B.   *The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of Guzman's Prior Sexual Offenses*

Second, Guzman contends the trial court prejudicially erred in admitting the evidence of prior sexual offenses. He asserts the evidence was "extremely prejudicial and outweighed any probative value," and that he was prejudiced by its admission. We disagree.

We review a challenge to the trial court's admission of section 1108 evidence, including its section 352 determination, for abuse of discretion. (*People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1104–1105.) "We will not find that a court abuse[d] its discretion in admitting such other sexual acts evidence unless its ruling ' "falls outside the bounds of reason." ' " (*Ibid.*) In

13

other words, we will not reverse a trial court's exercise of discretion under sections 1108 and 352 unless its decision was arbitrary, capricious or patently absurd and resulted in a manifest miscarriage of justice. (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1337.) We see no abuse of discretion in the trial court's ruling here.

"As a general rule, evidence that is otherwise admissible may be introduced to prove a person's character or character trait. (§ 1100.) But, except for purposes of impeachment (see § 1101, subd. (c)), such evidence is inadmissible when offered by the opposing party to prove the defendant's conduct on a specified occasion (§ 1101, subd. (a)), unless it involves commission of a crime, civil wrong or other act and is relevant to prove some fact (e.g., motive, intent, plan, identity) *other than a disposition to commit such an act* (§ 1101, subd. (b))." (*Falsetta*, *supra*, 21 Cal.4th at p. 911; accord *People v. Catlin* (2001) 26 Cal.4th 81, 145.)

The Legislature added section 1108 "to expand the admissibility of disposition or propensity evidence in sex offense cases." (*Falsetta*, *supra*, 21 Cal.4th at p. 911.) "Section 1108 was intended in sex offense cases to relax the evidentiary restraints section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility. In this regard, section 1108 implicitly abrogates prior decisions of [the California Supreme Court] indicating that 'propensity' evidence is per se unduly prejudicial to the defense." (*Falsetta*, at p. 911.) As our high court noted, " '[t]he Legislature has determined the need for this evidence is "critical" given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial.' " (*Ibid.*)

14

Thus, section 1108 explicitly allows evidence of other sexual offenses to be considered " ' "as evidence of the defendant's disposition to commit such crimes, and for its bearing on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense." ' " (*Falsetta, supra*, 21 Cal.4th at p. 912.) The only limitation placed on the admission of propensity evidence in a criminal sexual offense case is that of section 352. (See § 1108, subd. (a).) Evidence of other sexual offenses may not be admitted "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.)

Although the trial court's section 352 analysis depends on the unique facts and issues of each case, "five factors stand out as particularly significant in a[ ] . . . section 1108 case. These factors are (1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show the defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time." (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1117 (*Nguyen*).) "A trial court balances this first factor, i.e., the propensity evidence's probative value, against the evidence's prejudicial and time-consuming effects, as measured by the second through fifth factors." (*Ibid.*)

Here, the trial court granted the prosecution's request to admit evidence of Guzman's prior sexual offenses against S.H., S.G., and G.B. to demonstrate his propensity to commit sexual offenses. But, with the prosecution's agreement, the court excluded evidence that Guzman had threatened the minor girls and acted violently with two of them. In a written trial brief, the prosecution proffered the following evidence in support of its request to admit section 1108 evidence:

After discussing "engaging in sex acts" with Guzman and providing Guzman with her home address, then 16-year-old S.G. "changed her mind and told him not to visit her." Guzman drove to her home anyway and "threatened if she did not come outside, he would kill her mother and sister." He told S.G. "he would only leave her alone if she orally copulated him." She blocked his number but "he continued to call her from different numbers, calling her a 'slut.' His threats terrified [S.G.], and she lived in fear of him assaulting her or her family."

For nearly two months, Guzman had been coming to then 14-year-old S.H.'s home to have sex with her while her parents were away, until S.H.'s grandfather caught Guzman and "expelled" him from the home. Guzman then left a note at the house calling S.H. a " 'whore' and other derogatory language." S.H. then blocked him on social media.

Then 15-year-old G.B. met with Guzman, after connecting with him on a dating app. The third time they saw each other, when she was 16, Guzman "unbuttoned her pants and pulled down her pants and underwear. She said no and attempted to pull them back up but [Guzman] stopped her. She tried to keep her legs tightly together to prevent him from inserting his penis inside her vagina and anus and told him to stop. . . . Defendant pushed her legs apart and inserted his penis in her anus. . . . She tried to push him off

16

during the assault but he was too heavy."   The fifth time they met, Guzman "attempted to rape her again."  She stopped speaking to Guzman "[d]uring the middle of 11th grade" and "blocked him" on social media.

Guzman objected "to all of the 1108 [evidence] under [section] 352," but at minimum argued "for sanitization" of the evidence.  And indeed, the parties had conferred before trial and the prosecution agreed it would not elicit evidence regarding forcible rape, threats of violence, or derogatory language.  The trial court agreed with the parties' stipulation and stated, "Chances are, I would have ruled the same, anyhow."  Thus, the evidence of Guzman's prior sexual offenses was sanitized of any reference to threats, violence and derogatory language.

The trial court then went on to conduct a section 352 analysis on the remainder of the prosecution's evidence for *each* of the three witnesses.  As to each witness, the court found that once sanitized of the threats, violence, and derogatory language, evidence of the prior sexual offenses were "no more egregious" or "serious" than what was alleged in the charged crimes; is "consistent with similar conduct done in a similar fashion"; is "probative as to [Guzman's] intent and certainly the motivation and propensity behind this type of conduct"; and its probative value "outweighs any prejudicial impact." Further, the court found the evidence of the prior sexual offenses was not impermissibly remote or cumulative, noting the prosecution's representation they had sanitized the evidence "to the point where it's going to be only 10 minutes for each of these victims."

On this record, we have no difficulty concluding the trial court did not abuse its discretion and properly admitted evidence of Guzman's other sexual offenses.  The court weighed the five factors considered important in a section 1108 case, and then balanced the probative value of the evidence against its

17

prejudicial and time-consuming effects.[7]  (See *Nguyen*, *supra*, 184
Cal.App.4th at p. 1117.)  The court's ruling was well within the bounds of
reason, and certainly not arbitrary, capricious, or patently absurd.  Guzman's
arguments to the contrary are not persuasive.

Guzman takes issue with the trial court's finding that his prior "sexual
intercourse with two minors was 'probative to [his] intent and certainly the
motivation and propensity behind this type of conduct,' " and argues "that
evidence, along with G.B.'s testimony that [he] had contacted her via social
media in a sexual manner when she was underage, could have persuaded the
jury that [he] was the kind of person who commits sexual crimes — precisely
the type of propensity evidence that should be excluded."  Not so.  This is
precisely what section 1108 permits.  (See *Falsetta*, *supra*, 21 Cal.4th at
p. 912 [section 1108 explicitly allows evidence of other sexual offenses to be
considered " ' "as evidence of the defendant's disposition to commit such
crimes" ' "].)

Guzman contends the evidence of the prior sexual offenses lacked
probative value because there is a "very significant difference between
texting someone in a sexual manner [referring to the charged offenses] and
having sexual intercourse with someone [referring to S.H. and G.B.]; sexual
intercourse is much more egregious and inflammatory."  His contentions are
unpersuasive for two reasons.  First, the reason Guzman did not have sex
with an underage girl in the charged offenses was because "Destiny" did not
exist.  Second, the other sexual offenses need only be *"similar enough* to the
charged behavior to tend to show [Guzman] did in fact commit the charged

---

7    The prosecution's case-in-chief took one day, and the testimony of all
three witnesses introduced pursuant to section 1108 took only 16 pages of the
entire trial transcript.

18

offense." (*Nguyen*, *supra*, 184 Cal.App.4th at p. 1117, italics added.) That standard was met.

Indeed, the prior sexual offenses were remarkably similar to the charged offenses. Just as in the charged behavior, Guzman met all three of the other underage girls on either a dating app, social media, or phone; he knew they were minors because they told him so; knowing they were minors, he sent all of them sexually explicit text messages and proposed they meet to have sex, including oral sex; he had sex with S.H. and G.B. when they were minors and, although he did not have sex with S.G., he went to her home and texted her from outside the home with a request she perform oral sex on him. The prior sexual offenses were similar enough to the charged behavior to be probative of Guzman's propensity to commit the charged offenses.

In addition to demonstrating a defendant's propensity to commit the charged offense, section 1108 " ' "permit[s] the jury in sex offense . . . cases to consider evidence of prior offenses *for any relevant purpose*." ' " (*People v. Loy* (2011) 52 Cal.4th 46, 63.) Here, the trial court also properly admitted the evidence of Guzman's prior sexual offenses as relevant to his intent in the charged offenses. His defense at trial was he intended to meet Destiny to go for a walk in the park, not to have sex with her. He claimed he believed she was a 19-year-old woman who was only role-playing as a 13-year-old girl. Further, he claimed he had no desire to have sex with minors. The evidence of the prior sexual offenses against three other underage girls, with a similar modus operandi, was probative that he possessed the requisite intent in the charged offenses. Moreover, the evidence was probative " ' "on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense." ' " (*Falsetta*, *supra*, 21 Cal.4th at p. 912.)

Guzman contends, however, the probative value of the evidence was substantially outweighed by its prejudicial effect. He contends the prior sexual offenses against G.B. and S.G. involved uncharged offenses that did not result in convictions, so he argues the jurors might be " 'tempted' " to convict simply to punish him for the other offenses. And in the case of G.B., the uncharged conduct was more inflammatory because it involved sexual intercourse with a minor. Last, he argues the evidence of the uncharged offenses was "highly unreliable" because he never admitted these offenses and they were never proven in court. We are not persuaded by any of these contentions.

The trial court sanitized the evidence of the prior sexual offenses of the most egregious and inflammatory details. (See *Falsetta*, *supra*, 21 Cal.4th at p. 917 [in considering admissibility of section 1108 evidence and a section 352 weighing, trial court should consider "the availability of less prejudicial alternatives to its outright admission, such as . . . excluding irrelevant though inflammatory details surrounding the offense"].) The court instructed the jury on how it may (and may not) consider the evidence (CALCRIM No. 1191A), and we presume the jury understood and followed the court's instructions on the law. (See *People v. Martinez* (2010) 47 Cal.4th 911, 957.)

We disagree the uncharged offenses against G.B. and S.G., having not been admitted or proven, were "highly unreliable." The two cell phones found in Guzman's truck, one of which he unequivocally admitted was his, contained independent corroborating evidence of his texting with both minor girls. Moreover, Guzman admitted he had been "talking . . . for about two years" with G.B. and met her in person more than once. Although he denied having sex with her, his testimony provided corroboration of G.B.'s testimony that they did. Guzman did not dispute the sexually explicit text messages

20

sent to S.G. from the Samsung phone found in his car; he claimed his friend "Andrez" did so under his name, which again tended to corroborate S.G.'s testimony. Finally, the selfie Guzman had sent S.G. was found on the Samsung phone, discrediting his testimony he never texted her.

In sum, we conclude the trial court did not abuse its discretion and properly admitted evidence of Guzman's prior sexual offenses under sections 1108 and 352.

Our conclusion that no error has occurred disposes of Guzman's contention that the asserted evidentiary error violated his Fourteenth Amendment right to due process. But even assuming error, it would be state law error and evaluated for prejudice under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (See *People v. Jandres* (2014) 226 Cal.App.4th 340, 357 [applying *Watson* harmless error to admission of evidence under sections 1108 and 352].) Under that standard, we would conclude any error was harmless.

The evidence of Guzman's guilt, even without the section 1108 evidence, was overwhelming. The sexually explicit texts Guzman sent to Destiny were provided to the jury in evidence and we have reviewed them.[8] In these texts, Destiny immediately told Guzman, "So I've never had sex before tho. Is that cool. Like do you mind showing a 13 what to do or is that too weird." He responded, "Ill eat you out so good baby" and sent her a picture of his semi-erect penis. He asked her, "So wana suck it" with the same graphic picture and told her, "I'll fuck u good baby." She then told him, "I don't drive I'm 13." He asked her what grade she was going into and she

---

8 We reproduce the texts here without correcting the misspellings or grammatical errors.

answered, "Going into 8." She asked, "R u sure you don't mind that I'm 13. Ive never done this and don't want you to be disappointed that I don't know what to do." To that, he responded, "I'll fuck u good." He assured Destiny it was not a fantasy, and that he would show up at the park with the condoms, candy and soda she had requested. And then, he did exactly that. On this record, we conclude there is no reasonable probability a result more favorable to Guzman would have been reached absent the asserted error. (*Watson*, *supra*, 46 Cal.2d at p. 836.)

## II.

*The Matter Shall Be Remanded For Resentencing Pursuant to Penal Code Section 1170, Subdivision (b), as Amended*

At the time of Guzman's sentencing, Penal Code section 1170, former subdivision (b), left it to the sentencing court's "sound discretion" to select the appropriate term within a sentencing triad that "best serves the interests of justice." (Pen. Code, § 1170, former subd. (b), as amended by Stats. 2018, ch. 1001 (Assem. Bill No. 2942) § 1.) During the pendency of this appeal and relevant here, the Legislature enacted two ameliorative sentencing bills which made significant amendments to the determinative sentencing law under Penal Code section 1170, effective January 1, 2022.

First, Senate Bill 567 amended Penal Code section 1170, former subdivision (b), to provide that "a court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Pen. Code, § 1170, subd. (b)(2).) Second, Assembly Bill 124 amended Penal Code section 1170 to make a low-

22

term sentence presumptively appropriate when a defendant's "childhood trauma" is a "contributing factor" to the defendant's commission of an offense. (Pen. Code, § 1170, subd. (b)(6)(A).)

Guzman contends he is entitled to retroactive application of both Senate Bill 567 and Assembly Bill 124, and requests that we vacate his sentence and remand for resentencing under Penal Code section 1170, as amended. The Attorney General correctly concedes both ameliorative amendments apply retroactively to Guzman. (*In re Estrada* (1965) 63 Cal.2d 740, 742 [we presume, absent evidence to the contrary, that statutes that reduce punishment for criminal conduct apply retroactively to all defendants whose sentences are not final on the statute's operative date]; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1095 [Assembly Bill 124 applies retroactively to nonfinal cases on direct appeal]; *People v. Lopez* (2022) 78 Cal.App.5th 459, 465 [Senate Bill 567 applies retroactively to nonfinal cases on direct appeal].) However, the Attorney General argues remand is not required under either amendment.

Here, we conclude Senate Bill 567 does not apply to Guzman's sentence, but he is entitled to remand for an opportunity to further develop the record for the trial court's consideration of Penal Code section 1170, subdivision (b)(6)(A), as amended by Assembly Bill 124.

A.  *Remand Under Senate Bill 567 Is Not Required Because the Trial Court Did Not Impose Any Upper Term Sentence*

We agree with the Attorney General that remand is not required under Senate Bill 567 because the trial court did not impose any upper term sentence. The court sentenced Guzman to four years in prison. It arrived at this term by imposing the middle term of three years on count 2 (Pen. Code, § 288.4, subd. (b)), a consecutive term of one-third the middle term for four months on count 3 (Pen. Code, §§ 664, 311.4, subds. (c) & (f)), and a

23

consecutive term of one-third the middle term for eight months on count 4 (Pen. Code, § 288.2, subd. (a)(2)).  The court stayed imposition of sentence on count 1 (Pen. Code, § 288.3, subd. (a)), pursuant to Penal Code section 654.  Penal Code section 1170, subdivision (b), as amended, does not apply here because the court did not exceed the presumptive middle term on any count. (Pen. Code, § 1170, subd. (b)(2).)

Guzman, however, asserts he is entitled to the benefits of Senate Bill 567.  This is so, he argues, because the trial court considered evidence of his prior sexual offenses "when imposing sentence" and used it "as an aggravating factor" to "increas[e] the sentence *above probation or the low term*, and then imposed the middle term because of [his] background." (Italics added.)  And this aggravating factor had not been proven beyond a reasonable doubt to the jury or admitted by him, as required by the new law. There are two problems with Guzman's argument.  One, Penal Code section 1170, subdivision (b)(2), as amended, requires an aggravating factor be proven beyond a reasonable doubt or stipulated by the defendant when used to "exceed[ ] *the middle term*," not probation or the low term.  (Pen. Code, § 1170, subd. (b)(2), italics added.)  Two, Guzman's argument mischaracterizes the record.  The court did not consider the evidence of his prior sexual offenses in "imposing sentence."  It considered that evidence in denying probation.

In evaluating Guzman's suitability for probation, the court discussed with counsel whether it could consider the evidence of his prior sexual offenses admitted at trial.  The court "put it this way:  Without it, all he has is a misdemeanor stat rape criminal history.  *That would in my mind weigh in whether I give him probation or not*.  If I can consider that evidence, he sounds like a total predator to me, not redeemable *at any probationary level*,

24

unstoppable force. So I think that's a big factor." (Italics added.) The court again said, "if it turns out I can consider that evidence [of prior sexual offenses], *I'm really not inclined to give him probation*, because to me, at that point being allowed to consider that evidence, he's done this multiple times, multiple victims, understanding there's no real victim in this case." (Italics added.) The court ultimately found Guzman was not a "good candidate" for probation based on "the totality of the record," including the evidence of his prior sexual offenses. The court stated, "He would appear to be a predator in this regard having victimized several underaged girls."

In deciding the term to impose, the trial court stated that "[i]n considering the aggravating and mitigating factors, [it was] going to follow the probation officer's recommendation" of a middle term sentence. The probation officer had identified in his report two aggravating factors—the manner in which the crime was carried out showed planning, sophistication, or professionalism (Cal. Rules of Court, rule 4.421(a)(8)) and the defendant's prior convictions as an adult are numerous or of increasing seriousness (*Id.*, rule 4.421(b)(2))—and one mitigating factor—the impact of the defendant's crime on the victim in this case is less serious than the impact in similar cases (*Id.*, rule 4.408). Although the court did not use any aggravating factor to impose the upper term, evidence of Guzman's prior uncharged sexual offenses was not among the aggravating factors listed in the probation report.

B.    *Remand Is Appropriate Under Assembly Bill 124*

We conclude remand is appropriate under Assembly Bill 124 to allow Guzman an opportunity to further develop the record for the trial court's consideration of this amendment. Penal Code section 1170, subdivision (b)(6)(A), as amended, provides: "[U]nless the court finds that the aggravating circumstance outweigh the mitigating circumstances that

25

imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."

In the probation report to the court, the probation officer summarized Guzman's "social history," as provided by Guzman. Guzman stated his mother abandoned his father and their six children when he was four years old. He described his father as "authoritarian, chauvinist and constantly upset with him and his siblings" and "[h]e recalled many family conflicts between his father, siblings, and other close relatives." At age 14, he "left El Salvador due to threats from the cartels and illegally entered the United States." He reported "his physical and mental health as 'good' with no known ailments, disabilities, or diagnosis" and that he was not currently in treatment and "does not believe he is [in] need of such."

Guzman contends "the court should have imposed the lower term based on these factors" from his social history under the new law, and the remedy is remand for resentencing. The Attorney General disagrees. He acknowledges "the record shows [Guzman] may have experienced some trauma during his childhood" but argues remand is not required because "the trial court appeared to agree with the probation report that the aggravating circumstances outweighed the single mitigating factor the report identified." The Attorney General points out that the court found Guzman was a " 'predator,' he had victimized several underage girls in the past, he was previously granted probation, and that grant of leniency did not work because he continued to commit the same crimes." And thus the Attorney General argues, "[e]ven if the court had found that [Guzman] experienced some

26

trauma that contributed to his commission of the crimes, the record demonstrates that the court would not have sentence[d] [him] to anything less than the term it imposed."

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) When a trial court sentences a defendant without awareness of the full scope of its discretion, the appropriate remedy is to remand for resentencing. (*Ibid; People v. Banner* (2022) 77 Cal.App.5th 226, 240 (*Banner*).) However, remand for resentencing is not required if the record " 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*Gutierrez,* at p. 1391.) In other words, remand is not required when it would be an "idle act." (*People v. Flores* (2020) 9 Cal.5th 371, 432.)

We disagree the record clearly indicates the trial court would have imposed the same sentence had it considered the new requirements of Assembly Bill 124. The court's comments regarding Guzman's predatory behavior and recidivism were made in the context of whether he was a suitable candidate for probation, not the appropriate sentence to impose. And in imposing sentence, the court simply stated: "In considering the aggravating and mitigating factors, I'm going to follow the probation officer's recommendation [of the middle term]." The court did not specify the number of factors it considered or the weight it assigned to them when selecting the middle term.

But the Attorney General concedes the record does contain information that suggests Guzman "may have experienced some trauma during his childhood." Although the trial court did not refer to Guzman's social history as "childhood trauma" (Pen. Code, § 1170, subd. (b)(6)(A)), it made comments

after it imposed sentence suggesting it considered Guzman's social history as mitigation. In response to a request by defense counsel to redact the social history from the probation report, the court said the request was "a double-edged sword" and asked, "Doesn't that information kind of help him? It is sort of mitigating as far as his background is concerned. The truth is that I did consider that in not giving him [the] upper term."

We note there is no evidence or argument in the record that Guzman's childhood experience was "a contributing factor in the commission of the offense." (Pen. Code, § 1170, subd. (b)(6)(A).) But neither party would have had an incentive to develop the record on this potential mitigating factor since Assembly Bill 124 had not yet been enacted. (See *Banner, supra,* 77 Cal.App.5th at p. 242 [noting that, prior to the enactment of Assembly Bill 124, neither the defendant nor the trial court had an incentive to assess whether childhood trauma contributed to the crime].) Consequently, the record is incomplete as to whether the trial court would have considered Guzman's background as "childhood trauma" or that it was "a contributing factor" in the commission of the offenses. (See Pen. Code, § 1170, subd. (b)(6)(A).) The record is also incomplete as to the weight the trial court allocated to the aggravating and mitigating factors, and whether it would find the imposition of the lower term contrary to the interests of justice.

We thus conclude the record does not clearly indicate the trial court would have reached the same conclusion even if it had been aware that it had such discretion under the new sentencing law. Accordingly, remand is appropriate for the parties to further develop the record for the trial court's consideration of any factor under Penal Code section 1170, subdivision (b)(6)(A), as amended. We express no view as to how the trial court should exercise its discretion on remand.

28

## DISPOSITION

Guzman's sentence is vacated.  The matter is remanded to the trial court for resentencing consistent with this opinion.  The judgment is affirmed in all other respects.

DO, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.